CLARK COUNTY SPORTS ENTERPRISES, INC., Appellant, *v.* CITY OF LAS VEGAS, NEVADA, a Municipal Corporation, Respondent.

No. 10385

February 6, 1980                                              606 P.2d 171

*Jolley, Urga & Wirth,* Las Vegas, for Appellant.

*George F. Ogilvie,* Las Vegas City Attorney, and *Janson F. Stewart,* Deputy City Attorney, Las Vegas, for Respondent.

## OPINION

By the Court, Manoukian, J.:

This is an appeal from a judgment granting plaintiff-lessor-respondent City of Las Vegas a permanent Writ of Restitution of premises, together with money damages, as a result of Clark County Sports Enterprises, Inc.'s alleged failure to comply with several material lease provisions. Defendant-lessee-appellant is a private corporation. The judgment provided for restitution of the premises to respondent, $4,000 in rent arrears,

and $9,500 for the replenishment of the gravel stockpile. The judgment also noted further defalcations by virtue of appellant's failure to pay $8,640 in back taxes and failure to maintain approximately 300 feet of fence on the leased premises.

Of the five issues presented, we determine that only three warrant our consideration. They are: (1) Whether there is substantial evidence supporting the trial court's finding that the presence of the gravel pit did not unreasonably interfere with appellant's leasehold interest; (2) Whether the trial court committed error in refusing to allow appellant a set-off incidental to a contractual dispute regarding an amended lease agreement; and (3) Whether, because municipal property is the subject of the lease, the lessee is entitled to lessor's governmental exemption. We find no error in the judgment of the trial court.

On October 21, 1970, respondent City and appellant entered into a fifteen-year lease of city property located north of metropolitan Las Vegas. Appellant was to develop the property primarily as a racing facility and was to keep a stockpile of gravel for respondent's use. Respondent was to receive as rent a certain annually graduated percentage of the gross ticket sales, or "in any event" $250 per month for the first year and $500 per month for each succeeding year. In April of 1971, the parties agreed to an amendment of the lease. Appellant and respondent apparently believed that the only significant modification of the 1970 lease was the property description. There were, however, a few other changes from the first lease.

Paragraph 4 of the lease was also materially amended. The new paragraph deleted the requirement that attendance counters be present at all events and that appellant reimburse respondent for these counters. The new provision stated that the City had the right to audit appellant's federal income tax return during the duration of the lease. Mr. Carl Price, president of the appellant corporation, attempted to revise the amended lease by restoring the former provision. No revision was made but respondent continued to collect from appellant for the counters.

Paragraph 5 of the lease provided that the lessor reserved all sand and gravel rights. Appellant was to maintain a continual stockpile of gravel in a mutually convenient area of at least 35,000 yards, at the expense of appellant. This additional consideration was extremely important to respondent as this pit had for many years been a resource for city road and related repairs, especially following flash flooding. The parties agreed that respondent would have an access easement to the gravel and that the easement was not to interfere unreasonably with appellant's construction and use of the premises. In August of 1976, appellant notified the City that further stockpiling and

removal of gravel would unreasonably interfere with appellant's construction and use of the premises. Appellant then stated that no further gravel would be stockpiled upon exhaustion of the present inventory.

The lease also required appellant to pay any taxes levied against the property. On October 21, 1976, respondent gave notice of default to appellant, thereby informing appellant of its failure to stockpile gravel in accordance with the lease, of the rental and tax delinquency, and of the fact that the fence surrounding the property was in a state of disrepair in contravention to the lease agreement.[1] No steps to cure default were taken by appellant and a notice to quit possession was served upon the corporation on November 25, 1976. Approximately one month later the instant complaint was filed.

On January 31, 1977, appellant filed an answer and counterclaim. With but two inconsequential exceptions, appellant's claims and affirmative defenses made below form the basis for its contentions on appeal.

*1. The Gravel Pit.*

The trial court *sua sponte* amended finding of fact number 11, which finding now reads:

> That the location of the gravel pit was established by mutual agreement between the parties; that the design and construction of the various race tracks on the premises was done by defendant with full knowledge of the requirements for stockpiling gravel; that the removal of gravel by the plaintiff has not been greater than the amount that could have reasonably contemplated [*sic*] by the parties;

---

[1]The notice of default provided in part:

1. Paragraph 5 of the agreement requires that you maintain a continual stockpile of at least 35,000 yards of gravel. We have been advised that the present stockpile only contains approximately 17,800 cubic yards of gravel.

2. By paragraph 3 of the subject agreement, you are required to pay to the City of Las Vegas a minimum monthy lease payment of $500.00. This office has been advised that you are now three (3) months in arrears in payment of your rent.

3. By paragraph 8 of the lease agreement, you were required to pay and discharge, in addition to the rent, all taxes and penalties applied to the leased premises by any Federal, State or Local Government. This office has been advised that you are presently delinquent in payment of your taxes for the years: 1973–1974; 1974–1975 and 1975–1978 [*sic*] in the approximate amount of $8,321.10.

4. Paragraph 8 of said lease agreement requires the Lessee to maintain the improvements on the property in good and substantial order. This office has been advised that the fence, in particular the fence surrounding the gravel stockpile, is down in several places and needs immediate repair.

that the use of the gravel pit does not constitute such an unreasonable danger or unreasonable interference of the use of the premises by the defendant to justify the defendant's failure to stockpile gravel as required by the lease.

On appeal, appellant challenges the sufficiency of the evidence to support this factual finding. The evidence shows that the general gravel pit site was established by mutual agreement and the racing facilities were designed and located by appellant with the understanding that the City's interest must be accommodated—namely, that a perpetual stockpile of 35,000 yards of gravel be maintained. Appellant contends that the use of the gravel pit interferes with its operation of the racing facility and, therefore, that it is entitled to suspend its obligation under the lease that it maintain the stockpile. Appellant, however, attempts to demonstrate a present unreasonable interference based on future projections of attendance.

On direct examination, appellant's counsel asked one of appellant's expert witnesses, Mr. Vella, if it was reasonable to anticipate attendance now or in the next fifteen years of twenty-four thousand spectators at a road race track event. Vella responded "that crowds of 20,000 to 30,000 people could reasonably be expected to attend road race events" at the facility. Following objection, Vella testified, "There is a lack of bleacher area to seat the people. At present, I would say somewhere around twenty to thirty, a well promoted professional series brought in." Vella's testimony was given in relation to prospective area requirements to accommodate road racing audiences.

The record shows that attendance figures from 1972 to 1975 never exceeded 4,200. Moreover, respondent demonstrated through Vella, that the pit posed no audience or race track threat where it was located in 1977 and did not otherwise interfere with the lessee's present use. This witness did state that another gravel pit realistically could not be located elsewhere on the property due to roadway safety reasons. Nevertheless, the court did view the property and could properly find, as it did, from the evidence presented, that the present stockpile requirements did not interfere unreasonably with the use of the property. In addition, with appellant's status in a state district court receivership and its lack of financial liquidity, it is doubtful, even given the inflated audience potential, that the necessary improvements would have been obtained to accommodate these spectators. The court's determination shows that it did not believe that the rate of gravel removal was too high or that there was a danger to the lessee's facilities. It is well established that we will not disturb a determination by the lower court

when it is supported, as here, by substantial evidence. Sievers v. Diversified Mtg. Investors, 95 Nev. 811, 817, 603 P.2d 270, 274 (1979); Harris v. Shell Development Corp., 95 Nev. 348, 351, 594 P.2d 731, 733 (1979); Bird v. Mason, 77 Nev. 460, 461, 366 P.2d 338, 338–39 (1961).

## 2. Attendance Counters.

Paragraph 4 of the October 21, 1970 lease provided that "persons selected by Lessor known as 'counters' shall be placed at the gate to insure an accurate count of . . . ticket sales . . . and that such 'counters' are to be supplied at the expense of Lessee." The amended lease of April 1, 1971 provided that the lessee would instead send lessor its tax return each year and that lessor could audit lessee's books. The trial court found "[t]hat notwithstanding the change in paragraph 4, each of the parties by conduct and written memorandum agreed to be governed by the provisions of paragraph 4 contained in the lease of October 21, 1970." Appellant contends this finding of modification was clearly erroneous. We disagree.

Parties may mutually consent to enter into a valid agreement to modify a former contract. Holland v. Crummer Corp., 78 Nev. 1, 7, 368 P.2d 63, 66 (1962). And parol evidence may be used to show an agreement to modify. Silver Dollar Club v. Cosgriff Neon Co., 80 Nev. 108, 110, 389 P.2d 923, 924 (1964). Similarly, consent to a modification may be implied from conduct consistent with an asserted modification. Resource Engineering, Inc. v. Siler, 500 P.2d 836, 838–39 (Idaho 1972).

The testimony given by witnesses for both parties was remarkably consistent respecting the facts that: (1) Paragraph 4 of the 1970 lease controlled; (2) Post-1971 letters and wage forms evidenced that counters were to be provided by the City and appellant continued to pay for and the City continued to receive money for such provision; (3) Appellant was persistently opposed to an audit provision; (4) The parties stipulated that $3,360.55 was paid for the counters during appellant's state district court receivership and the period of March 4, 1974 and August 21, 1975; and, both parties thought that the change of description was the only modification.

In order to justify modification, the evidence must be clear and convincing. Ore-Ida Potato Products, Inc. v. Larsen, 362 P.2d 384, 385 (Idaho 1961). It is clear from appellant's letters and respondent's responses and other evidence, both oral and

written, that the parties did agree "to be governed by the provisions . . . in the lease of October 21, 1970." The evidence is sufficient to support the trial court's finding of a modification.

### 3. The Tax Exemption.

The trial court found that appellant, since 1972, had failed to pay *ad valorem* taxes as required by paragraph 6 of the lease and that the amount owed was $8,640.01. The court found appellant subject to the taxes under NRS 361.157(1) as appellant was a private corporation using the property to conduct a business for profit.[2] We agree with that court's determination.

Appellant contends that it is not subject to taxation due to NRS 361.060 which provides that all lands owned by any municipal corporation are exempt from taxation.[3] Respondent argues that NRS 361.157 provides the controlling exception that when any exempt real estate is leased to a business conducted for profit, it is subject to taxation as though the lessee owned the property. Appellant answers first that subsection 3 of NRS 361.157 states that the exception in subsection 1 providing for taxation does not apply to property such as "an airport, park, market, fairground" or similar property available to the use of the general public.[4] Secondly, appellant asserts that NRS 361.157(1) does not apply at all to 361.060 since the former is a general exception and cannot control the latter which has one specific exception of its own. Finally, appellant argues that even if 361.157(1) applied, the property would not be subject to taxation as the property has been used to provide the City with gravel and is for a public purpose and intended to be exempt.

This court has held that NRS 361.157 is constitutional as

---

[2]NRS 361.157(1) provides:

When any real estate which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a natural person, association, partnership or corporation in connection with a business conducted for profit, it is subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of the real estate.

[3]NRS 361.060 provides:

All lands and other property owned by any county, domestic municipal corporation, irrigation, drainage or reclamation district or town in this state shall be exempt from taxation, except as provided in NRS 539.213 with respect to certain community pastures.

[4]NRS 361.157(3) provides in part: "Subsection 1 does not apply to: (a) Property located upon or within the limits of a public airport, park, market, fairground or upon similar property which is available to the use of the general public . . . ."

applied to a lessee of the federal government. Standard Oil Co. of California v. Pastorino, 94 Nev. 291, 293, 580 P.2d 118, 119 (1978). And a corporation may only be taxed when property it leases from a government entity is used in connection with a business for profit. *See* Clark County v. City of Los Angeles, 91 Nev. 309, 535 P.2d 158 (1975) (municipal water company); State *ex rel.* Brennan v. Bowman, 89 Nev. 330, 512 P.2d 1321 (1973) (private corporation running pollution control facilities).

Although this property may be open to the public under NRS 361.157(3), such factor does not mean the property is similar to a market, park or fairground. It is not reasonable to infer that the legislature intended to benefit a privately-owned race track simply because it is open to the public. Certainly the legislature did not intend to provide an exemption for a supermarket simply because it is open to the public for business. *Cf.* Sunset Memorial Gardens v. Idaho State Tax Commission, 327 P.2d 766 (Idaho 1958) (cemetery open to public not exempt as a "public cemetery"); Supervisor of Assessments v. Washington National Arena Ltd., 402 A.2d 148 (Md.App. 1979) (property with dominating sports arena not a "park"). It is clear from the language of NRS 361.157 that it was the intent of the legislature to limit the facilities described to those operated by a public entity. Had the legislature intended inclusion, it would have specifically so provided by language to that effect. This the legislature failed to do. Tax exemptions are based on the accomplishment of public purpose and not the benefitting of private interests at the expense of taxpayers generally. Abex Corp. v. Commissioner of Taxation, 207 N.W.2d 37, 41–42 (Minn. 1973); State v. Ritschel, 20 N.W.2d 673, 676 (Minn. 1945). Moreover, presumptions are against an intent by the state to provide an exemption and the one claiming exemption must demonstrate clearly an intent to exempt. *See* J.C. Penney Insurance Co. v. State Board of Equalization, 157 Cal.Rptr. 1 (Cal.App. 1979); Pacific Northwest Conference of Free Methodist Church v. Barlow, 463 P.2d 626 (Wash. 1969).

We have considered the remaining issues and summarily reject them.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring:

I concur in the result.