**James B. HARPER, Jean L. Harper, Bert Claspell Heating, Cooling and Electric Inc., Appellants,**

v.

**Estel GOODIN, Martha L. Goodin, Appellees.**

**No. 1–1279A371.**

Court of Appeals of Indiana, First District.

Sept. 9, 1980.

Rehearing Denied Oct. 23, 1980.

Malcolm G. Montgomery, Evansville, for appellants.

Terry Noffsinger, Evansville, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal from the Vanderburgh Superior Court by defendants James B. Harper and Jean L. Harper as two appellants (Harpers) from an adverse judgment for breach of contract and punitive damages, and by defendant Bert Claspell Heating, Cooling and Electric, Inc., as the other appellant (Claspell) from an adverse judgment for slander of title and punitive damages. Both judgments were in favor of the plaintiffs–appellees Estel Goodin and Martha L. Goodin (Goodins) after verdicts rendered by a jury.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

The Goodins, on September 13, 1974, purchased for $34,350 a parcel of real estate from the Harpers containing a residence, newly constructed by the Harpers who built it for the purpose of sale. The sum of $2,500 was held in escrow by a bank to be paid to the Harpers when the Goodins were satisfied that the work was completed. The Goodins occupied the residence on September 24, 1974, and within five or six weeks a controversy arose relative to defects.

Evidence most favorable to the judgment disclosed the following major defects: (1) furnace not working properly, (2) defective tile fitting, (3) unlevel floors, and doors that would not close, (4) water problems in the basement and rusty furnace which had fallen, pulling ductwork loose, (5) kitchen sink pulled loose from the wall, (6) defective concrete walk, (7) defective plumbing, (8) defective septic system, and (9) absence of cold air ducts. In addition, there were numerous other lesser defects. The Goodins introduced evidence from professional tradesmen to show that the cost of repairing the defects would be $500–$750 to $4,316. Estel Goodin testified that the house was worth $14,000 less than it would be worth absent the defects.

The Harpers, who had no workmen themselves, had subcontracted the construction to various workmen. The Harpers sent workmen on occasions to repair the defects. Ultimately, when the parties were unable to resolve the dispute, the Harpers offered the Goodins their money back and later offered them $36,000 to rescind the transaction. The Goodins refused for various reasons.

Claspell was a subcontractor employed by the Harpers to do certain mechanical trades within its expertise. Its last work was performed and last materials were furnished sometime prior to the sale on September 13, 1974. In the late fall, Bert Claspell, the president and principal of the corporation, who had, according to the record, at least 15 years experience in the trade, became alarmed that he might not get his money from the Harpers. He told the Goodins that the Harpers had promised him that he would be paid from the $2,500 escrow account. He further demanded payment from the Goodins and said that if he were not paid, he would file a mechanic's lien on the Goodins' property. The Goodins refused, and on January 25, 1975, Claspell filed its mechanic's lien. The Harpers paid Claspell about a week later, but Bert Claspell refused to release the lien even after demand by the Goodins and their attorney. He claimed that he filed the lien and refused to release it upon advice of counsel.

While this case was filed and tried as one action, there are in reality two separate actions. One action was against the Harpers for breach of contract and punitive damages, and the other was against Claspell for slander of title and punitive damages. The jury returned verdicts against the Harpers for $10,000 compensatory damages and $7,500 punitive damages, and against Claspell for $385 compensatory damages and $2,500 punitive damages.

## ISSUES

The defendants have preserved and argued on appeal the following alleged errors:

I. The awarding of punitive damages for alleged defective construction.

II. The awarding of excessive compensatory damages for alleged defective construction.

III. The awarding of compensatory damages for alleged slander of title.

IV. The awarding of punitive damages for alleged slander of title.

VI. The giving and reading to the jury of plaintiffs' instruction No. 1 that allegedly misstated the law regarding punitive damages.

## DISCUSSION AND DECISION

*Issue I. Punitive damages for defective construction*

Under this heading the Harpers allege the trial court committed error in denying their motion for judgment on the evidence regarding punitive damages for breach of contract for the defective construction.

■ In *First Federal Savings and Loan Association of Indianapolis v. Mudgett*, (1979) Ind.App., 397 N.E.2d 1002, this court engaged in an extensive review of the Indiana law of punitive damages arising out of breach of contract. We find it unnecessary to repeat that discussion *in toto* but refer the parties to it and the cases cited therein. Briefly, *First Federal Savings and Loan Association of Indianapolis*, recited that, as a general rule, punitive damages are not recoverable in contract actions, but two exceptions do exist. The first exception is where the breach is accompanied by conduct which also, independently, establishes the elements of a common law tort such as fraud. The other exception is where a serious wrong, tortious in nature, has been committed in an instance in which the public interest would be served by the deterrent effect punitive damages would have on the conduct of the wrongdoer and parties similarly situated.

■ The promisor's motive for breaching a contract is generally regarded as irrelevant because the promisee will be compensated for all damages proximately resulting from the promisor's breach. Where the facts surrounding the promisor's breach indicate substandard business conduct, the promisee may also enjoy a limited sense of requital in taking his business elsewhere in the future but he is not entitled to mulct the promisor in punitive damages.

■ Something more than a state of mind described as heedless disregard of the consequences is required for the imposition of punitive damages in breach of contract cases. Actual malice, or wantonness from which the law can imply malice, must be shown. The word "reprehensible" is used, as where there is conscious and deliberate conduct. Deceit is involved. Negligent conduct or incompetence is insufficient.

■ The Goodins' position on punitive damages presents an anamoly. While they characterize the house in their brief as "a frightful example of one built below standards," they refused the refund of their money. The evidence disclosed in the Statement Of The Facts fails to meet the sufficiency required for punitive damages in breach of contract cases. In support of punitive damages, the quality of construction was characterized, at best, as "extremely poor workmanship." We find no evidence that the Harpers' conduct could be described as an intentional tort, fraudulent, reprehensible, deceitful, false representation, or oppression commingled in the controversy, as required by our analysis in *First Federal Savings and Loan Association of Indianapolis, supra*. We therefore reverse the award of punitive damages for defective construction.

*Issue II. Excessive compensatory damages for defective construction*

The Harpers argue under this section that the award of compensatory damages in the amount of $10,000 is excessive.

■ Damages recoverable for breach of contract are limited to loss actually suf-

fered. *Ogle v. Wright*, (1977) Ind.App., 360 N.E.2d 240. The general rule is that the damages awarded must be within the scope of the evidence. *Prudential Insurance Company of America v. Executive Estates, Inc.*, (1977) Ind.App., 369 N.E.2d 1117. This court will not reverse the damage award if it is within the scope of the evidence. *Irving v. Ort*, (1957) 128 Ind.App. 225, 146 N.E.2d 107.

 The evidence given by professional builders disclosed a range of damage estimates from $500 to $4,316. Plaintiff Estel Goodin testified that the house was worth $14,000 less than it would be worth absent the defects. A landowner may testify as to the value of his land. *State v. Hamer*, (1936) 211 Ind. 570, 199 N.E. 589. A realtor testified that the house could be fixed for $500 to $700, and that as of the date of sale to the Goodins, it was worth from $40,000 to $45,000. Even accepting the argument of the Harpers that the Goodins used the $2,500 escrow account in the repair of the house, the verdict was within the scope of the evidence. Therefore, in accordance with our standard of review, this argument is untenable.

### Issues III and IV. Slander of title

Under these arguments, Claspell argues that the jury award of $385 compensatory damages and $2,500 punitive damages in the slander of title action against him is not supported by sufficient evidence.

 Slander of title actions are recognized in Indiana. The only Indiana case on the subjects holds that, to prevail, a plaintiff must prove that statements were made maliciously, that they were untrue, and that the plaintiff sustained pecuniary loss as a necessary and proximate consequence of the slanderous statements. *May v. Anderson*, (1895) 14 Ind.App. 251, 42 N.E. 946. This action against Claspell is bottomed on the fact that Claspell filed its mechanic's lien on January 25, 1975, although its last labor or materials were furnished sometime prior to

September 13, 1974. Thus, the filing was far beyond the 60–day period as required by Ind.Code 32–8–3–3. Also supporting the slander of title action is the fact that Bert Claspell refused, after demand, to release the lien after he was paid by the Harpers. Ind.Code 32–8–1–1 requires the holder of a mechanic's lien to release the lien of record after he has been paid, and Ind.Code 32–8–1–2 gives a right of action to the owner of the encumbered realty to effect a release and to recover up to $500 costs, and attorney's fees for the failure or neglect of the lien–holder to release his lien of record. The Goodins have commingled the common law slander of title action with the statutory action to effect the release of a mechanic's lien. However, Claspell has not objected in trial court or on appeal. These statutes have relevance as will be discussed, *infra*.

Claspell's argument is that there was no showing of malice and that it filed the lien and refused to release it after payment upon advice of counsel. The reason for refusing to release the lien was Bert Claspell's testimony that he believed that it terminated automatically.

 Relative to the defense of advice of counsel, Claspell cites no authority. Our research has disclosed no case directly on point in slander of title suits, but we believe the rule applied in malicious prosecution actions is applicable. In those actions, the mere fact that a party procures and acts upon the advice of an attorney so obtained does not, of itself, exempt him from liability or afford absolute justification for the prosecution. It is merely competent evidence tending to rebut malice and want of probable cause. *Flora v. Russell*, (1894) 138 Ind. 153, 37 N.E. 593. Such advice, to afford any protection, must be given upon a full and true statement of all the facts within the knowledge of the person seeking the advise, and must be acted upon in good faith and for an honest purpose. *Scotten v. Longfellow*, (1872) 40 Ind. 23.

The discussion of malice and punitive damages and the grounds therefor takes a different course in a slander of title action, a tort based in defamation, than in a breach of contract case as discussed in Issue I and in *First Federal Savings and Loan Association of Indianapolis, supra.* Rights in a breach of contract case all arise out of a contract entered into voluntarily between parties while tort law is concerned with the uninvited invasion into a person's domain by another causing the person injury. In the latter instance, allowance of punitive damages has been more liberal and follows a different standard.

▇▇▇ In the area of defamation, to support punitive damages, actual malice must be shown. *Weenig v. Wood,* (1976) 169 Ind.App. 413, 349 N.E.2d 235. In *Indianapolis Newspapers, Inc. v. Fields,* (1970) 254 Ind. 219, 259 N.E.2d 651, our Supreme Court brought into Indiana law the definition of malice announced by the United States Supreme Court in *New York Times Co. v. Sullivan,* (1964) 376 U.S. 254, 81 S.Ct. 473, 5 L.Ed.2d 492. We believe that definition applicable to this case. Under that definition, malice is publishing matter with knowledge that it is false or with reckless disregard as to whether it is false or not. *Cochran v. Indianapolis Newspapers, Inc.,* (1978) Ind.App., 372 N.E.2d 1211, 1219, quoting *St. Amant v. Thompson,* (1968) 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 further defined "reckless disregard of a statement's probable falsity," and said, "The evidence must show that the defendant in fact entertained serious doubts as to the truth of the statement." Actual malice may be inferred by the trier from the evidence. *Big Wheel Restaurants, Inc. v. Bronstein,* (1973) 158 Ind.App. 422, 320 N.E.2d 876.

▇▇▇ From the evidence, the jury could logically infer malice as defined in *Cochran, supra,* and *Indianapolis Newspapers, Inc., supra.* It could be inferred that Claspell, not having any contractual relation with the Goodins and with knowledge that the 60–day period had elapsed, attempted to coerce the Goodins into paying a debt owed by the Harpers by harassing the Goodins with a mechanic's lien. This is further supported by Claspell's attitude in refusing, even after demand, to release the lien after receiving payment. The duty to release the lien was clearly mandated by Ind.Code 32-8-1-1. While the Goodins' action against Claspell was apparently not brought under Ind.Code 32–8–1–2, that section reflects a strong statutory policy supporting *May, supra,* a false lien case, proscribing conduct such as this. As we have stated, the evidence of advice of counsel was before the jury to be weighed and considered, but it was not conclusive. The Goodins incurred $350 attorney's fees in getting the lien released. Therefore, we are of the opinion that there was sufficient evidence to support the judgment of compensatory and punitive damages against Claspell.

*Issue V. Instruction*

▇▇▇ In their final contention the appellants challenge the propriety of the court's giving and reading to the jury plaintiffs' instruction No. 1, which, insofar as contract actions are concerned, erroneously instructed the jury that it could assess punitive damages for conduct that would indicate reckless disregard of the consequences. We agree. However, the appellants' argument in relation to the instruction is directed solely to the suit against the Harpers and is thereby waived, for failure to argue it, in the suit against Claspell. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Since we have ruled favorably to the Harpers on the insufficiency of the evidence on punitive damages, this issue is moot.

▇▇▇ We note in passing that the objection to this instruction in trial court was that there was no evidence to support the instruction on punitive damages and "that it doesn't state the law concerning punitive damages in Indiana." Such an objection to

an instruction is insufficient to preserve any error under the requirement of Ind. Rules of Procedure, Trial Rule 51(C) that the objection must state distinctly the matter to which the party objects and the grounds of his objection. *Brown v. Indiana Department of Conservation et al.*, (1967) 140 Ind.App. 638, 225 N.E.2d 187.

For the above stated reasons, this cause is reversed as to the punitive damages award in the suit against the Harpers in sum of $7,500, and the trial court is directed to enter judgment for the Harpers in that regard. This cause is affirmed in all other respects.

Affirmed in part; reversed in part.

ROBERTSON, P. J., and RATLIFF, J., concur.