GLEN E. ROWLAND, MARTIN L. ROWLAND and ROWLAND CORPORATION, Appellants, v. EUGENE LEPIRE and JUDY LEPIRE, Respondents.

No. 13495

April 29, 1983                                    662 P.2d 1332

*Smith & Gamble, Ltd.,* Carson City, for Appellants.

*William Jac Shaw,* Carson City, for Respondents.

---

## OPINION

*Per Curiam:*

This is an appeal involving construction of a substantial residence by appellant, Rowland Corporation, for respondents, Eugene and Judy Lepire, husband and wife. Appellants contend that the trial court committed several errors in (1) finding that the express contract between appellants and respondents was modified rather than abandoned; (2) finding sufficient evidence supported respondents' claim of slander of title; (3) awarding respondents punitive damages; (4) awarding respondents attorney's fees; and (5) finding sufficient evidence upon which to base application of the alter ego doctrine.

Appellants Glen Rowland and Martin Rowland are officers, directors and shareholders of the Rowland Corporation. In July of 1977, the Rowland Corporation was issued a class B-2 general contractor's license with an authorized limit of $60,000. In April of 1978, appellants entered into a contract with the Lepires to construct a home for them in Carson City. The contract was for a total price of $119,000, less certain offsets and plus any extras the Lepires might request during the course of construction. The contract provided for four progress payments through completion. It did not provide for a completion date.

Construction began in April of 1978. During the course of construction, numerous changes were requested by the Lepires. Among other things, these changes increased the floor space in the house from 4,500 square feet to 6,500 square feet and

raised the house several inches. The foundations and outside dimensions remained the same. The Lepires made payments on the contract ahead of schedule and paid for extra labor and materials as requested.

In early December, problems began developing between the parties. A lien claim by a subcontractor hired pursuant to a contract with the Rowland Corporation had been filed in October of 1978. In addition, the Meek Lumber Company gave notice of its intent to file a lien against the residence. During this same period, Glen Rowland prematurely requested an additional payment.

These events precipitated a meeting between Glen Rowland and the Lepires on December 13, 1978. The district court found that an oral modification of the contract resulted from that meeting. Shortly thereafter, a controversy arose at the job site, causing the Rowlands to refuse further performance despite requests for completion by the Lepires. Instead, the Rowlands, upon advice of their attorney, filed a lien against the project for $68,000 on December 22, 1978. Recordation of the lien resulted in the Lepires' loss of an anticipated loan to be secured by the home. They were, nevertheless, able to obtain a personal loan at a higher interest rate.

As a consequence, the Lepires commenced this action in April of 1979, alleging breach of contract, slander of title and defamation. The defamation claim was later dismissed. In August 1979, the Rowland Corporation filed suit against the Lepires, alleging breach of contract, unjust enrichment and abuse of process. The two cases were eventually consolidated and the Rowland Corporation complaint was treated as a counterclaim in the Lepires' suit. Subsequently, a bench trial was conducted. The lower court found that the express contract had been modified and that appellants had materially breached the contract. Predicated on the foregoing findings and conclusions, the court awarded damages for the cost of completion, for the cost of correcting defective construction and for paying bills which the Rowland Corporation had incurred and was obligated to pay. Additionally, the court found that the lien made of record by the corporation constituted slander of title and awarded special damages and punitive damages in the amount of $15,000. Further, the court awarded the Lepires $12,000 in attorney's fees. Finally, the court found that the Rowland Corporation was the alter ego of Glen Rowland and Martin Rowland and entered a personal judgment against the Rowlands in the approximate sum of $65,000. Appellants appeal, challenging every portion of the judgment.

1. *The Express Contract.*

Appellants initially contend that the lower court erred in failing to find that the express contract between the parties was abandoned. They contend that because the completed house varied extensively from the house they contracted to build, the original contract was abandoned. They assert that because the express contract was abandoned, they are entitled to a quantum meruit recovery. Appellants rely on the case of Paterson v. Condos, 55 Nev. 134, 28 P.2d 499 (1934), to establish this position.

In *Paterson,* the trial court had found that where the provisions of an express contract were extensively changed during the course of construction, the express contract had been abandoned with the consent, acquiescence and direction of the defendant. On appeal, we held there was sufficient evidence to support the trial court's conclusion. In the present case, no such finding was made by the trial court; rather, it found that the contract had been modified and, impliedly, that no abandonment had occurred.

On appeal, the issue before this court is whether the lower court's finding is supported by substantial evidence. Jacobson v. Best Brands, Inc., 97 Nev. 390, 632 P.2d 1150 (1981); Clark Co. Sports v. City of Las Vegas, 96 Nev. 167, 606 P.2d 171 (1980). It is the prerogative of the trier of fact to evaluate the credibility of witnesses and determine the weight of their testimony. Jacobson v. Best Brands, Inc., *supra.* Where there is substantial evidence to support the findings of the trial court, this court will affirm the judgment even though the evidence is conflicting. *Id.*; Clark Co. Sports v. City of Las Vegas, *supra.* Only in rare circumstances will changes in the course of construction be so extensive as to require the conclusion as a matter of law that a contract was abandoned. Modern Builders, Inc. of Tacoma v. Manke, 615 P.2d 1332 (Wash.Ct.App. 1980). Our review of the record demonstrates that the evidence in support of the findings of the trial court is substantial and does not require a conclusion as a matter of law that the express contract was abandoned.

In light of our resolution of the issue of the existence of an express contract, the issue of whether "unclean hands" bars appellants' rights to a quantum meruit recovery need not be addressed.

2. *Slander of Title.*

Appellants next contend that the evidence does not support the trial court's finding that their actions in perfecting the labor and materialmen's lien constituted slander of title. We agree.

The requisites to an action for slander of title are that the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken. Potosi Zinc Co. v. Mahoney, 36 Nev. 390, 135 P. 1078 (1913); *see also* Summa Corp. v. Greenspun, 98 Nev. 528, 655 P.2d 513 (1982); Soller Corp. v. W.B.C. Development, 96 Nev. 704, 615 P.2d 956 (1980).

In the instant case, the evidence establishes that the Lepires did not owe any money to the Rowlands. In that the lien stated the Lepires did owe money to the Rowlands, this statement was false. The evidence also establishes that the Lepires suffered pecuniary losses as a result of the lien. These damages resulted from the fact that the Lepires were required to pay higher interest rates for a personal loan when the loan secured by the property was denied due to the lien. However, the evidence fails to establish the element of malice.

In order to prove malice it must be shown that the defendant knew that the statement was false or acted in reckless disregard of its truth or falsity. *See* Howard v. Schaniel, 169 Cal.Rptr. 678 (Ct.App. 1980); Pecora v. Szabo, 418 N.E.2d 431 (Ill.App.Ct. 1981); Restatement (Second) of Torts § 623A (1977); Restatement (Second) of Torts § 624 (1977). Where a defendant has reasonable grounds for belief in his claim, he has not acted with malice. Merchants Nat. Bank of Mobile v. Steiner, 404 So.2d 14 (Ala. 1981); Whildin v. Kovacs, 403 N.E.2d 694 (Ill.App.Ct. 1980). Additionally, evidence of a defendant's reliance on the advice of counsel tends to negate evidence of malice. Cavin Memorial Corporation v. Requa, 85 Cal.Rptr. 107 (Ct.App. 1970); Board of County Com'rs, Etc. v. Goldenrod Corp., 601 P.2d 360 (Colo.Ct.App. 1979); Harper v. Goodin, 409 N.E.2d 1129 (Ind.Ct.App. 1980).

In the present case, Martin Rowland testified that the Lepires had always made payments when requested and that he had not submitted a bill for the amount of the lien prior to perfecting the lien. He stated, however, that the Rowlands had been ejected from the job site by the Lepires and that he had been told by Glen Rowland that Gene Lepire had refused to pay any more money. He testified that he went to see an attorney concerning the problems with the Lepires and thereafter followed his attorney's advice. He testified that he assumed his counsel had sent a request for payment. He also testified that the

amount of the lien was arrived at after consulting with his attorney; however, he could not demonstrate how the figure was arrived at at the time of the trial. He did state that the figure was the difference between the amount of money paid and the amount that was due for completed work. He also stated at one point that the amount owed was $47,000. He stated that he believed the amount of the lien was owed to the Rowland Corporation. When questioned as to why he had caused the lien to be personally delivered to the bank from which the Lepires were seeking their loan, Martin Rowland denied having done so, but he stated that he was aware that his attorney had caused it to be delivered. He further testified that this was the first lien he had filed and did not think delivery of the lien to the bank was unusual.

Glen Rowland testified that Gene Lepire had told him on the day they were ejected from the job site that there would be no more money. He testified that the lien procedure was initiated on the advice of the Rowlands' former counsel. He testified he had no idea how the amount of the lien was arrived at, though he had discussed some figures with Martin, his father. Glen also testified that he knew the Lepires were attempting to obtain a loan. When questioned as to whether he informed his former attorney that the Lepires were trying to arrange for a loan from First National Bank, he stated that although he could not recall doing so, it was possible. From this and related testimony, the lower court found:

> The recording of the lien was without right, wilful and intentional and done with careless disregard for the rights of the plaintiff.
> There was malicious intent on behalf of the defendants and each of them, in so recording the lien claim.

While acknowledging that the trial court was able to observe the witnesses and judge their credibility, we fail to discern, from this record, that substantial evidence supported the trial court's finding of malice. Indeed, here, we perceive that a legitimate business dispute arose between a contractor and an owner. This dispute caused the Rowlands to seek the advice of counsel. The record reveals that the Rowlands relied upon the recommendations of their former attorney and acted upon those recommendations. It does not indicate that they believed filing the lien was improper. Such evidence does not support a finding that the lien was maliciously filed. *See* Cavin Memorial Corporation v. Requa, *supra;* Board of County Com'rs, Etc. v. Goldenrod Corp., *supra;* Harper v. Goodin, *supra.*

### 3. *Punitive Damages.*

The trial court relied on its finding of malice in the cause of action for slander of title as the basis for awarding punitive damages. As we have held that the finding of malice is not supported by evidence in the record, the award of punitive damages based on that finding must also be reversed.

### 4. *Attorney's Fees.*

Appellants contend that the trial court's award of $12,757.12 in attorney's fees was erroneous because the contract did not provide for such and the damage award exceeded $10,000.

It is settled that attorney's fees are not recoverable absent a statute, rule or contractual provision to the contrary. Locken v. Locken, 98 Nev. 369, 650 P.2d 803 (1982); Von Ehrensmann v. Lee, 98 Nev. 335, 647 P.2d 377 (1982). Nevada's statutory provision regarding attorney's fees provides in pertinent part:

> 18.010 Award of attorney's fees.
> 1. The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.
> 2. The court may make an allowance of attorney's fees to:
> (a) The plaintiff as prevailing party when the plaintiff has not recovered more than $10,000; or
> (b) The counterclaimant as prevailing party when he has not recovered more than $10,000; or
> (c) The defendant as prevailing party when the plaintiff has not sought recovery in excess $10,000.

The statute does not authorize an award of attorney's fees where the prevailing party has recovered in excess of $10,000. Consequently, if respondents have a right to recover fees, the right must be based on something other than this statute.

The contract between the parties was drafted by appellants. It provided that if the Rowland Corporation was required to retain counsel for the purpose of enforcing the agreement, the Lepires agreed to pay the attorney's fees. There was no reciprocal provision for the benefit of the Lepires. Respondents, however, point to the testimony of Martin Rowland, wherein he states that a provision for attorney's fees for the benefit of the Lepires was left out due to an oversight. The trial court found in findings of fact Nos. 27 and 28:

27. The contract contains a provision that the defendants would be entitled to attorney's fees in the event it or they had to sue under it.

28. This same right and benefit is impliedly extended to the plaintiffs.

Respondents argue that the foregoing is a finding supported by the referenced evidence, and that there was an implied agreement within the previously quoted portion of NRS 18.010 entitling them to attorney's fees.

Appellants respond that the testimony referred to is ambiguous, in that Martin Rowland also testified that if the Lepires wanted a reciprocal provision for attorney's fees, they should have insisted that one be incorporated into the contract. In addition, the lower court concluded in conclusion of law No. 9: "The plaintiffs are entitled to attorney's fees pursuant to the theory of mutuality of remedy." We believe that the finding of fact implying a right to attorney's fees stemmed from the trial court's conclusion that respondents were entitled to fees under the theory of mutuality of remedy. There was no factual or legal support for the court's determination. Moreover, there was no request that the contract be reformed to reflect the true intention of the parties and the trial court failed to mention any right to reformation. We conclude that the trial court erred in basing the fee award on an implied agreement.

The lower court also awarded attorney's fees as special damages resulting from the breach of contract and the slander of title.

Attorney's fees are not properly awarded as special damages for breach of contract. Von Ehrensmann v. Lee, *supra.* Since we have held that the trial court's conclusion that appellants committed slander of title is not substantiated by the evidence, the attorney's fees are not properly awarded as special damages resulting from that cause of action. There being no basis for the award of attorney's fees, the award is reversed.

5. *The Alter Ego Doctrine.*

Appellants' final contention is that the trial court erred in finding that sufficient evidence existed to justify piercing the corporate veil. We agree.

In order to apply the alter ego doctrine, the following requirements must be met: (1) the corporation must be influenced and governed by the person asserted to be its alter ego; (2) there must be such unity of interest and ownership that

one is inseparable from the other; and (3) the facts must be such that adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice. Mosa v. Wilson-Bates Furniture Co., 94 Nev. 521, 583 P.2d 453 (1978); McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317 P.2d 957 (1957). In North Arlington Med. v. Sanchez Constr., 86 Nev. 515, 522, 471 P.2d 240, 244 (1970), we stated:

> Undercapitalization, where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied. However, in the absence of fraud or injustice to the aggrieved party, it is not an absolute ground for disregarding a corporate entity. In any event, it is incumbent upon the one seeking to pierce the corporate veil, to show by a preponderance of the evidence, that the financial setup of the corporation is only a sham and caused an injustice.

In the instant case, the record reveals that the Rowland Corporation was incorporated by Martin Rowland in 1974. The directors at the time of incorporation were Martin Rowland, Glen Rowland and Gerald Rowland. Martin Rowland acted as president, performing the bookkeeping duties, and Glen Rowland acted as vice president, handling the construction. Shares of stock were first issued in 1977: one share for $100 issued to Martin Rowland and his wife; one share for $100 issued to Glen Rowland and his wife; one share for $100 issued to Darlene Rowland (Martin's daughter); and one share for $100 issued to Gerald Rowland (Martin's son) and his wife. Several months later, an additional five shares were issued to Martin and his wife for $500 and two shares issued to Glen and his wife for $200. In addition to this paid-in capital, Martin Rowland made an unsecured personal loan of $15,000 to the corporation in 1977. The corporation had no other assets, and, as of the time of trial, had a negative net worth. Although no formal directors or shareholders meetings were ever held, Martin testified that in lieu thereof, he personally phoned the directors and shareholders regarding corporate business. No dividends were paid to shareholders, nor did the officers or directors receive salaries. The corporation did not have a minute book, nor is there evidence that any minutes were kept. The corporation did obtain a general contractor's license and a framing contractor's license, both in its name. It also obtained a surety bond in the amount of $5,000. The corporation also obtained workmen's compensation insurance and transacted business with the Employment Security Department. In addition, there was a

corporate checking account. Martin also testified that other directors and shareholders besides Glen and he were involved in the corporation business. Martin and Glen did not, however, confer with the other shareholders or directors when they entered into the Lepire contract, nor when they filed the lien.

Although the evidence does show that the corporation was undercapitalized and that there was little existence separate and apart from Martin and Glen Rowland, we conclude that the evidence was insufficient to support a finding that appellants were the alter ego of the Rowland Corporation. *See* North Arlington Med. v. Sanchez Constr., *supra.*

Appellants' remaining claims either lack merit or need not be addressed.

The trial court's judgment is affirmed with the exception of its findings of slander of title, alter ego and its award of punitive damages and attorney's fees. We reverse the latter determinations.