NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 28 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RODNEY MOTT, | No. 20-15744 |
| Plaintiff-counter-defendant-Appellant, | D.C. No. 2:16-cv-01949-JCM-EJY |
| v. | |
| PNC FINANCIAL SERVICES GROUP, INC.; SELECT PORTFOLIO SERVICING, INC.; RADIAN SERVICES, LLC; SPECIAL DEFAULT SERVICES, INC., | MEMORANDUM* |
| Defendants, | |
| and | |
| TRINITY FINANCIAL SERVICES LLC; TROJAN CAPITAL INVESTMENTS, LLC, | |
| Defendants-counter-claimants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted May 7, 2021
Seattle, Washington

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  BOGGS,[**] BERZON, and MURGUIA, Circuit Judges.

This case arises from Trinity Financial Services' and Trojan Capital Investments' (collectively "Defendants") attempt to foreclose on Rodney Mott's home in Las Vegas, Nevada.  Mott claims that his debt on the home was forgiven and that Defendants have no authority to foreclose.  Mott sued Defendants asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act, and Nevada state law.  Defendants counterclaimed, asserting claims for quiet title and declaratory relief.  The parties cross-moved for summary judgment, and the district court granted summary judgment to Defendants. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      Mott contends that Defendants have no authority to foreclose on his home because his underlying debt was forgiven.  Mott submits a letter from First Franklin Loan Services, from which he obtained a $300,000 loan, which purports to forgive Mott's debt in its entirety.[1]  The district court determined that the "highly questionable" letter was insufficient for any jury to reasonably find in his favor. Mott argues that the district court improperly weighed this evidence, and that it

---

[**]     The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[1] Mott signed a promissory note (the "Note") secured by a second position deed of trust on this home.

2

should have reached the jury.  We disagree.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002); *see* Fed. R. Civ. P. 56(c).  To be admissible, a document must be authentic, meaning there must be "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  A trial court cannot consider unauthenticated documents in a motion for summary judgment.  *See Orr*, 285 F.3d at 773.

Here, the purported debt-forgiveness letter was riddled with errors that called into question its authenticity.  Mott presented no supporting tax documentation or evidence of reconveyance of the deed to the home to verify the purported debt forgiveness.  Nor did Mott identify any individuals who could authenticate the letter or seek to introduce any other supporting evidence, such as the letter he claims to have sent that triggered the forgiveness letter.  In excluding the letter from consideration as inadmissible, the district court did not abuse its discretion.  *See id.* ("The district court's exclusion of evidence in a summary judgment motion is reviewed for an abuse of discretion.").  Because the letter was an unauthenticated document, the district court did not err.  *See id.*

2.      Mott argues that because neither Trinity nor Trojan is licensed as a mortgage broker or banker in Nevada, neither party could have lawfully acquired

3

the Note, and neither can now lawfully foreclose on the home. Mott contends that Defendants failed to comply with two Nevada statutes—Nev. Rev. Stat. §§ 645B and 645E.[2]

First, Mott argues that Defendants are "mortgage bankers," which are persons or entities that directly or indirectly hold themselves out as being able to buy or sell notes secured by liens on real property. *See* Nev. Rev. Stat. § 645E.100(1). Such entities must obtain a license to do so. *See id.* § 645E.200; *see also id.* § 645E.900 (noting that entities may not "offer or provide any of the services of a mortgage banker or otherwise to engage in, carry on or hold [themselves] out as engaging in or carrying on the business of a mortgage banker without first obtaining a license" unless an exemption applies). Likewise, Mott argues that Defendants were also "mortgage brokers," which are similarly persons or entities "who, directly or indirectly" "[h]old[] [themselves] out as being able to buy or sell notes secured by liens on real property[.]" *Id.* § 645B.0127(d). These entities must also obtain licenses before buying or selling notes. *See id.* § 645B.020.

Trinity purchased Mott's note from nonparty Stelis, LLC, in 2015. Trinity then sold its interest in the note to Trojan, which began foreclosure efforts in 2016.

---

[2] These statutes were effective through December 31, 2019. On January 1, 2020, Nev. Rev. Stat. § 645E, the Mortgage Banker Act, was consolidated with Nev. Rev. Stat. § 645B, the Mortgage Broker Act. For purposes of our analysis, we look to the previous versions of the statute as did the district court and the parties.

Based on these two transactions, Mott asserts that Trinity and Trojan acted as unlicensed mortgage brokers and bankers. Contrary to Mott's assertion, however, he cannot challenge these underlying transactions. Under Nevada law, the consequence of a person acting without the appropriate license is a "[contract] voidable by the other party to the contract." *See id.* §§ 645B.920, 645E.920. As the contracts are voidable, not void, the transactions remain valid with respect to third parties, including Mott. Mott nevertheless contends that he could bring a civil action as a "client," under Nev. Rev. Stat. §§ 645B.930 and 645E.930. But there is nothing in the record indicating that Mott ever tried to do so, nor does he present any authority in which Nevada courts have sanctioned suits under similar circumstances.[3]

3.    Even if Defendants had lawfully acquired the Note, Mott argues that some of his FDCPA claims against Trojan should have survived summary judgment. Mott alleges that Trojan violated 15 U.S.C. § 1692e(2), 1692e(5), and 1692e(10), by misrepresenting the interest rate and the late fees in letters Trojan sent him.

Mott points to two letters, sent on February 23, 2016 and March 17, 2016, in

---

[3] It appears that, at least with respect to Mott, Defendants acted as mortgage servicers and were exempt from the mortgage servicer licensing requirement. *See* Nev. Rev. Stat. §§ 645F.063, 645F.500. However, this does not necessarily mean Defendants were exempt from licensing requirements as mortgage bankers or brokers under Nev. Rev. Stat. §§ 645B and 645E. We need not reach that question, as Mott cannot challenge the underlying transactions to the Note.

which Trojan specified an 8.63 percent interest rate, when, based on the Note, the interest rate should have been 8.625 percent. We find Trojan's minor misrepresentations as to the interest rate immaterial. "We have consistently held that whether conduct violates [the FDCPA] requires an objective analysis that considers whether the least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (internal quotation marks and citation omitted). "[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [section] 1692e." *Id.* Importantly here, Mott does not contend that Trojan's letters miscalculated the total debt he owed or that he was ever charged the microscopically higher interest rate stated in the February 23 and March 17 letters. We find that these minor misrepresentations could not reasonably have misled Mott. This is especially true given that Mott received two subsequent letters, on March 24, 2016 and July 20, 2016, which reflected the correct 8.625 percent interest rate. To create liability based on such immaterial information would undercut the purpose of the FDCPA. *See Donohue*, 592 F.3d at 1033–34; *see also Afewerki v. Anaya L. Grp.*, 868 F.3d 771, 776 (9th Cir. 2017) ("Immaterial false representations . . . are those that are literally false, but meaningful only to the

6

hypertechnical reader." (internal quotation marks and citation omitted)).[4]

4.      Nor is Mott's argument on his slander-of-title claim convincing.  Mott contends that Trojan committed slander of title by recording a Notice of Breach and Default with the Clark County Recorder on August 19, 2016.  Mott's allegation is premised on his argument that Trojan has no authority to enforce the Note because it was unlicensed when it bought his Note from Trinity.  Under Nevada law, "[t]he requisites to an action for slander of title are that the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken." *Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983).

As discussed above, Mott's licensing argument is unavailing.  Because the underlying transactions involving the Note are valid, and Defendants properly acquired the Note, it cannot be that Trojan's recording of the Notice of Breach and Default was "false." *See id.*  The district court was correct that "[b]ecause of its legitimate interest in the property, Trojan did not slander title."

---

[4] Mott also highlights another letter, sent on February 10, 2016, in which Trojan represented that Mott owed $1,408.00 in late payment fees, when, according to Mott, he should have been charged $1,396.00.  We disagree that this representation is a violation of the FDCPA.  Trojan's letter is more reasonably interpreted as requiring Mott to pay the February 2016 late fee, the month when the letter was sent, to reinstate his loan.  As Mott acknowledges, payments are due on the first day of each month and a late fee is applied thereafter.  Thus, by February 10, 2016, Mott was required to pay $1,408.00.

5.      Finally, Mott argues that the district court erred in denying his motion to strike the untimely disclosed Stelis agreement. A district court may exclude evidence if a party fails to comply with Rule 26, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). We review the district court's ruling for abuse of discretion. *See Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1155 (9th Cir. 2015). The district court determined that the untimely disclosure was harmless because the Stelis agreement was not determinative to the district court's ruling on summary judgment, Mott had access to the Stelis agreement from another related case, and Mott conceded that the transfer of the Note to Trinity was authorized. These were valid reasons not to exclude the agreement and we find that the district court did not abuse its discretion in refusing to do so. *Id.*

**AFFIRMED.**