RALPH MOSA, Appellant, *v.* WILSON-BATES FURNITURE CO., a Corporation, Respondent.

No. 9238

August 9, 1978                           583 P.2d 453

---

[Rehearing denied September 14, 1978]

*John Manzonie,* Ely, for Appellant.

*C. E. Horton,* Ely, for Respondent.

## OPINION

*Per Curiam:*

In an action brought by Respondent Wilson-Bates Furniture Company, Ralph Mosa was found liable for goods sold and delivered to Mobel, Inc., doing business as Cattleman's Inn.

Mosa has appealed claiming that the trial judge erred in applying the alter ego doctrine in finding him individually responsible for the corporation's debts. We disagree and affirm the judgment.

1. Uncontroverted evidence as to the background and operation of Mobel, Inc., established that it had been formed in connection with the purchase of Cattleman's Inn; that a Charles R. Bell (who was a party-defendant below but relieved of any liability) and Appellant were the sole stockholders and that Appellant was the sole contributing investor.

While Bell had originally managed the business for a period of several months, Appellant had possession and control of the business operations on or about March 1, 1976. After that time, no corporate formalities, such as meetings or stockholder reports, were observed. The corporate bank account was disregarded, and all receipts and expenditures were made from an account in Appellant's name. The liquor license held by Cattleman's was changed to omit the corporate name and substitute that of Appellant only.

2. Appellant's principal complaint on appeal is that the trial court "found no evidence to support the alter ego doctrine" upon which the court predicated Appellant's personal liability.

Since we are not favored with formal findings of fact, we must look to the findings contained in the decision of the trial court for purposes 'of this review. NRCP 52(a); Poe v. La Metropolitana Co., 76 Nev. 306, 353 P.2d 454 (1960). While the court did find that there was no such evidence existing at the time, the debts were incurred (i.e., while the business was under the management of co-defendant Bell), the court also found that after March 1, 1976, Appellant had "seized control" of the corporate business, "converted the Cattleman's Inn into a

private business enterprise," and had become "The alter ego of the Corporation."

The court further found that after Appellant's assumption of control of the business of the corporation, he had given Respondent "personal assurance at various times that he [Appellant] would personally pay the outstanding debts of Mobel, Inc.," and that such assurances were given "to induce forebearance by [Respondent] in asserting its claim against the corporation for debts due and owing."

The court observed that shortly thereafter "the Corporation went out of business, rendering the debts [uncollectible]." The court concluded that "Injustice can be avoided only by enforcement of [Appellant's] promises to pay the debt of Mobel, Inc."

3.   This court has repeatedly restated the factors needed to establish the alter ego doctrine:

> "(1) The corporation must be influenced and governed by the person asserted to be its alter ego. (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice." *Eklund v. Nevada Wholesale Lumber Co.,* 93 Nev. 196, 197, 562 P.2d 479, 479-80 (1977), quoting *McCleary Cattle Co. v. Sewell,* 73 Nev. 279, 282, 317 P.2d 957, 959 (1957).

The trial court's finding of alter ego after March 1, 1976, is fully supported by the record. As in *Caple v. Raynel Campers, Inc.,* 90 Nev. 341, 526 P.2d 334 (1974), Appellant was the sole investing and directing force; there was "unity of interest and ownership of such nature that the corporation had no apparent independent business operation." 90 Nev. at 344, 526 P.2d at 336. Likewise in *Carson Meadows Inc. v. Pease,* 91 Nev. 187, 533 P.2d 458 (1975), Appellant clearly "governed the business enterprise," failed to hold meetings or keep corporate records, "commingled corporate funds with his own," and "used the corporate shell as a conduit for his individual enterprise." 91 Nev. 191, 533 P.2d at 460-61. Unlike the individuals in *Eklund v. Nevada Wholesale Lumber Co.,* supra, *North Arlington Med. v. Sanchez Constr.,* 86 Nev. 515, 471 P.2d 240 (1970), or *Baer v. Amos J. Walker, Inc.,* 85 Nev. 219, 452 P.2d 916 (1969), Appellant was shown to have been an owner of the corporation.[1]

---

[1] This court has indicated that "the holding out by an individual that he is personally liable for the debts of the corporation" may be properly taken into account in determining whether the doctrine should apply. *North Arlington Med. v. Sanchez Constr., supra,* n. 3, 86 Nev. at 522, 471 P.2d at 245.

Also relevant in the case at hand are the judge's findings that Appellant, after the alter ego relationship had arisen, had given his personal assurances to the creditor that he would be personally responsible for the debt. In these circumstances, the trial court's determination that the imposition of liability upon Appellant was necessary to avoid injustice must be upheld. The court's application of the alter ego doctrine is supported by substanial evidence in the record. Consequently, the judgment is affirmed.