BONANZA HOTEL GIFT SHOP, INC., A NEVADA CORPORATION, AND RON MARKIN AND BONANZA HOTEL MEN'S SHOP, INC., APPELLANTS, *v*. BONANZA NO. 2, A NEVADA CORPORATION, LEVIN-TOWNSEND COMPUTER CORPORATION, A NEW JERSEY CORPORATION, AND J. J. ENTERPRISES OF NEVADA, A NEVADA CORPORATION, RESPONDENTS.

No. 9921

June 14, 1979                                            596 P.2d 227

*Wiener, Goldwater & Waldman, Ltd.,* Las Vegas, for Appellants.

*Dickerson, Miles & Pico,* Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

The principal issue presented is whether respondents Levin-Townsend Computer Corporation and J. J. Enterprises of Nevada, of which respondent Bonanza No. 2 is a subsidiary, should be held liable for obligations due appellants from Bonanza No. 2.

The appellant Ron Markin and the two appellant corporations formed by Markin originally operated the Bonanza Hotel Gift Shop, Inc. and the Bonanza Hotel Men's Shop, Inc.

under two leases with Bonanza No. 2, a Nevada corporation which later went through bankruptcy proceedings.[1]

After the hotel and shops had been closed, Markin entered into a new lease with Nathan Jacobson, the new president of Bonanza No. 2. A new ten year lease for the gift shop space was entered into between Bonanza Hotel Gift Shop, Inc. and Bonanza No. 2. The lease provided, *inter alia,* that the gift shop was to pay $50,000 "key money" upon execution of the lease, and an additional $50,000 "[a]t such time as Landlord shall make room additions to Hotel Bonanza and open the same for public occupancy." Jacobson testified that their understanding was that when a proposed new 1000-room complex was completed, leases for the men's shop and gift shop would be executed without further consideration. Later, the hotel again ceased operation and the gift shop was closed. Bonanza No. 2 defaulted on its trust deed obligations, and the underlying property was sold.

Much of the testimony at trial focused on the question of the potential liability of defendants J. J. Enterprises, a Nevada corporation, and Levin-Townsend Computer Corporation (now known as Rockwood Computer Corporation), a New Jersey corporation, through their ownership and alleged domination of Bonanza No. 2 during the period in question.[2] Markin claimed that 30 to 45 days after negotiation of the lease Jacobson introduced Howard Levin and James Townsend to him as "owners" of the hotel. Other evidence revealed that at various times Levin and Townsend were members of the boards and executive officers of Levin-Townsend Computer Corporation, Levin-Townsend Enterprises, J. J. Enterprises, and Bonanza No. 2.

The trial court found that "At the time that the lease was entered into, Markin was dealing with Jacobson, the then President of Bonanza. The evidence does not establish that Jacobson was a tool of the other corporate defendants. To the contrary, he was the chief executive officer of Bonanza and in control of the everyday operations of Bonanza No. 2. There is

[1]For the prior history of the luckless Bonanza No. 2, see Lipshie v. Tracy Investment Co., 93 Nev. 370, 566 P.2d 819 (1977).

[2]The evidence relative to ownership revealed that J. J. Enterprises purchased 100% of the stock of Bonanza in 1969 for approximately $3 million. J. J. Enterprises had been formed in 1969, and received capital from the sale of stock to Jacobson (15%) and Levin-Townsend Enterprises (85%). In September, 1969, Jacobson's shares were sold to Levin-Townsend Enterprises. Levin-Townsend Enterprises, in turn, was owned by Levin-Townsend Computer Corporation (Rockwood). At the time of the lease, Levin-Townsend Computer Corporation was a publicly held company, listed on the American Stock Exchange.

no evidence that at the time the $50,000 was paid over, that Jacobson, or anyone else, made misrepresentations concerning the construction of the new hotel complex." The court found no basis for the application of the alter ego doctrine, and determined that judgment should be entered in favor of all defendants.[3]

## THE ALTER EGO

Appellants contend that the facts of this case call for the application of the doctrine of alter ego; that the interests of justice mandate that the fiction of separate corporate entities be ignored, and respondents J. J. Enterprises and Levin-Townsend Computer Corporation be held liable for the obligations of their subsidiary, Bonanza No. 2. We do not agree.

The basic requisites for the application of the doctrine of alter ego have been well established.

> (1) The corporation must be influenced and governed by the person asserted to be its alter ego. (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice.

McCleary Cattle Co. v. Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957), as quoted in Mosa v. Wilson-Bates Furniture Co., 94 Nev. 521, 583 P.2d 453, 454 (1978). A mere showing that one corporation is owned by another, or that the two share interlocking officers or directors is insufficient to support a finding of alter ego. Lipshie v. Tracy Investment Co., 93 Nev. 370, 566 P.2d 819 (1977). It must further be shown that the subsidiary corporation "is so organized and controlled, and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." Savage v. Royal Properties, Inc., 417 P.2d 925, 927 (Ariz.App. 1966). *See also* Pittsburgh Reflector Co. v. Dwyer & Rhodes Co., 23 P.2d 1114 (Wash. 1933); Markow v. Alcock, 356 F.2d 194 (5th Cir. 1966). Nor is mere mutuality of interest sufficient to make such a showing, without evidence of a commingling of funds or property interests, or of prejudice to creditors. First Nat. Bank v. Walton, 262 P. 984 (Wash. 1928).

---

[3]None of the parties has addressed the implications of the trial court's decision to enter judgment in favor of *all* defendants, including Bonanza No. 2. It appears that as a practical matter the court below and the parties have treated the issue of alter ego as a "threshold" issue in recognition of the futility of proceeding solely against Bonanza No. 2.

In the case at hand, the evidence showed that separate corporate books and accounts were kept. Separate directors' meetings were held, and minutes recorded, with full corporate formalities observed. The corporations had independent headquarters, separate business responsibilities and operations. There was no showing that the parent companies had in any way impaired the assets of the company with which appellants had dealt. Indeed the evidence is that the parent companies poured some $10 million into Bonanza No. 2 before deciding to cut further losses.

The trial court's determination that the doctrine of alter ego was not applicable to the respondent corporations is fully supported by the evidence and must be upheld. We therefore affirm.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.