In re William Edward TOWE, a/k/a Edward Towe, Cora Florence Towe, a/k/a Florence Towe, Debtors.

Craig D. MARTINSON, Trustee, and United States of America Internal Revenue Service, and Montana Department of Revenue, Intervenors, Plaintiffs,

v.

William Edward TOWE, a/k/a Edward Towe and Grant Investments Fund, a partnership,

and

Norma Gumpel, Lewis Rector and Nancy Brooks, Intervenors, Defendants.

Bankruptcy No. 90–11685–7.
Adv. No. 91/00166.

United States Bankruptcy Court,
D. Montana.

Sept. 26, 1994.

Sherry Scheel Matteucci, U.S. Atty., D.Mont., Victoria L. Francis, Asst. U.S. Atty., Kirk C. Lusty, Eric M. Casper, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiffs Craig D. Martinson, U.S., I.R.S.

Paul Van Tricht, Dept. of Rev., Office of Legal Affairs, Helena, MT, for plaintiff Mont. Dept. of Revenue.

Carey Matovich, Billings, MT, for defendant William Towe.

Gerald Murphy, Moulton Law Firm, Billings, MT, for defendant Grant Inv. Fund.

James A. Patten, Billings, MT, for defendants Norma Gumpel, Lewis Rector, Nancy Brooks.

Thomas Towe, Billings, MT, for S.O. Tow Trust.

Gerald Murphy, Moulton Law Firm, Billings, MT, for TAFF, Heartland Trust, Lewis Rector Trust, Towe Farms, Inc., Towe Foundation.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Chapter 7 Trustee and Intervenors United States Internal Revenue Service (IRS), and Montana Department of Revenue (DOR), seek turnover of assets of the Defendant Grant Investments Fund (Grant), a partnership, on the grounds that Grant is the alter ego of the Debtor Edward Towe. Intervenors/Defendants Gumpel, Brooks, and Rector are investors and partners of Grant who oppose the turnover of such assets, contending first, with Grant and Towes, that the Trustee lacks standing to bring an alter ego claim; second, that the doctrine of collateral estoppel does not apply; and third, if the partnership entity is pierced, all investors of Grant are entitled to priority positions as creditors. Each of these arguments will be addressed in turn. The parties concede this is a core proceeding under 28 U.S.C. § 157(b)(2)(E), and that this Court has jurisdiction under 28 U.S.C. § 1334 and F.R.B.P. 7001.

## A. TRUSTEE'S STANDING

■ The Defendants argue the Plaintiff Chapter 7 Trustee and the Intervenor Plaintiff lack standing in this case to "assert causes of action based on the alter ego theory," citing *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988). *Williams* holds:

We agree with the Eighth Circuit that Congress' express decision to overrule *Caplin* [*v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) ] is "extremely noteworthy". [*In re* ] *Ozark* [*Restaurant* ] *Equip. Co.*, 816 F.2d [1222] at 1228 [8th Cir.1987]. We also share that court's certitude that "Congress' message is clear— *no* trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee[,] has power under … the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors." *Id.* (Emphasis added).

859 F.2d at 667.

The holding in *Williams* must be considered in light of the facts of that case where the Trustee attempted, through assignment, to bring actions personal to creditors on behalf of the estate. *Williams* holds the "Trustee lacked authority to bring suit on the claims." *Id.* In *Williams*, the Trustee, through assignments, was attempting to recover judgments on claims which were personal to each creditor, and which were not property of the bankruptcy estate. In that context, then, the holding is correct.

However, where the Chapter 7 Trustee seeks to recover assets of a debtor's estate through an alter ego action by piercing the corporate veil, the case law is consistent that the Trustee has standing. As explained in *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348–49 (7th Cir.1987):

However, the Trustee has no standing to bring *personal* claims of creditors. A cause of action is "personal" if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors. If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim. *See 3A Fletcher Cyc Corp.*, §§ 1134, 1277.1 (rev.perm.ed. 1986).

*Koch* and other cases such as *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir.1987) rely on the "well-reasoned" approach of *In re Western World Funding, Inc.*, 52 B.R. 743, 783 (Bankr.Nev.1985):

The debtor need not have even a claim of title at the time of bankruptcy, if a creditor could have nevertheless acquired a lien on the property. 4B *Collier* at 574. This expansion of the trustee's lien rights under the Act was carried over to the Code at § 544(a)(1). Its "plain and literal import" gives the trustee of a corporate debtor a lien on all the nonexempt property of directors, officers, and stockholders, under the same conditions that creditors might have reached that property. 4A *Collier* at 435 n. 41. Therefore, the trustee's alter ego claim may be construed as an action to establish the extent of his lien under § 544(a)(1), which the trustee certainly has standing to pursue.

The trustee's standing may also be based on 11 U.S.C. § 541 and § 704. The trustee has the duty to collect and reduce to money the property of the estate. § 704(1). Section 541(a)(1) provides that the estate is comprised of all legal and equitable interests of the debtor, including any chose in action which the debtor might have had against others. 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed.). Under the Nevada alter ego doctrine, the corporation has, in some sense, an equitable interest in the assets of its alter ego, because the corporation and the alter ego are identical. The trustee brings the alter ego action to establish this identity. He certainly has standing to seek a declaratory judgment that certain assets are in equity, if not in law, assets of the estate, and thereby subject to his administration.

\* \* \* \* \* \*

In this state, the alter ego is not considered to be a "third party" to whom liability is shifted. In the seminal case of

*McCleary Cattle* [*v. Sewell*], the Nevada Supreme Court noted:

> [T]he [creditors] are not seeking to reach assets in the hands of a third party ... [or] to substitute or add a new party to the old action. For the purposes of execution, the [corporation] and [its alter ego] are to be regarded as identical.

73 Nev. [279] at 282, 317 P.2d 957 [1957]. The Court of Appeals for the Ninth Circuit has followed this rationale in remarking that a bankruptcy trustee could be deemed to be in constructive possession of the defendant's assets "by a determination of alter ego, *i.e.*, that the [defendant] and the bankrupt are pragmatically one and the same." *Suhl v. Bumb*, 348 F.2d [869] at 873 [9th Cir.1965]. Other courts have held that the assets of a debtor-corporation's alter ego are assets of the estate. *See, e.g., Freehling v. Nielson* (*In re F & C Services, Inc.*), 44 B.R. 863, 11 C.B.C.2d 1126, 1130 (Bankr.S.D.Fla.1984), and authorities cited therein. *See also Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941).

■ As the Court in *Western World Funding* noted, under Nevada law the alter ego doctrine is an equitable remedy where the corporate entity is disregarded or pierced where (1) the corporation is influenced and governed by the person asserted to be its alter ego; (2) where there is such a unity of interest and ownership that one is inseparable from the other; and (3) that adherence to the fiction of separate entity of the corporation would sanction a fraud or promote injustice. 52 B.R. at 777. The Ninth Circuit Court of Appeals in *Towe Antique Ford Foundation v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir.1993), citing Montana cases, cited two general factors which Montana courts consider in determining whether to disregard the separate identity of a corporation. First, the party seeking to pierce the corporate veil must show the corporation is the alter ego of the individual. *Id.* Second, there must be a showing that the corporation was used as a subterfuge to defeat public convenience, justify wrong or perpetrate fraud, keeping in mind that the alter ego doctrine is an equita-

ble remedy to curb injustices resulting from the improper use of a corporate entity. *Id.* at 1391–92. The alter ego doctrines described in *Western World Funding* and *Towe Antique Ford Foundation* are thus very similar, if not identical. Indeed, one of the Montana cases cited in *Towe Antique Ford, Meridian Minerals Co. v. Nicor Minerals, Inc.*, 228 Mont. 274, 742 P.2d 456, 462 (1987), cites and relies upon the Nevada case of *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, (1979), 95 Nev. 463, 596 P.2d 227, 229, thereby indicating an approval of the Nevada alter ego doctrine.

I conclude, therefore, that the Trustee has standing to bring a claim for relief on the basis of the Montana alter ego doctrine. In fact, only the Trustee could prosecute such action to recover assets for the estate. *In re Guyana Development Corp.*, 168 B.R. 892, 909 (Bankr.S.D.Tex.1994). (As a creditor, the IRS has no standing to allege an alter ego theory for the bankruptcy estate absent order of the court allowing the creditor to proceed in exceptional cases where the Trustee unjustifiably refuses to act). Therefore, if the Trustee likewise was prohibited from asserting the alter ego doctrine to prevent an injustice, the wrongdoer would escape unharmed to the detriment of the creditors. Accordingly, the Defendants' assertion the Trustee lacks standing to bring this action is without merit.

### B. *COLLATERAL ESTOPPEL*

■ The doctrine of collateral estoppel was placed in issue by the Plaintiffs with the admission into evidence of a decision of the United States District Court for the District of Montana entitled *Grant Investments Fund v. Internal Revenue Service*, CV–89–126–Blg–JFB (D.Mont.1991), 1991 WL 208442 (D.Mont.1991) (U.S. Ex. 8.). That decision was a wrongful levy action commenced by Grant after levy by the IRS of 6,040 silver dollars ostensibly owned by Grant. Among other matters, the district court found as follows:

> 14. The Court therefore turns to the facts relevant to the government's alternative theory to justify its levy on the silver coins:

the contention that Grant Investments Fund is the "alter ego" of Edward Towe.

15. In seeking to satisfy legitimate tax debts, the government may pierce a corporation, or other business entity, "when the corporate device frustrates the clear intendment of the law." *Valley Finance, Inc. v. United States,* 629 F.2d 162, 171 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). This situation may occur when the corporation or partnership is determined to be the "alter ego" of the taxpayer. *Id.; see also Loving Saviour Church v. United States,* 728 F.2d 1085 (8th Cir.1984).[1]

16. "State law governs the determination of whether there exists an alter ego from whom the government may satisfy the obligation of a taxpayer." *Wolfe v. United States,* 806 F.2d 1410, 1411 (9th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987). Thus, Montana's substantive law governs this Court's determination of whether Grant Investments Fund is the alter ego of Edward Towe.

17. In Montana, "no concrete formula exists under which a court will disregard the separate identity of the corporate entity." *Hando v. PPG Industries, Inc.,* 236 Mont. 493, 498, 771 P.2d 956, 960 (1989). Whether a court pierces the corporate (or business entity) veil "depends entirely upon the circumstances of each case." *Id.; see also Valley Finance,* 629 F.2d at 172. Factors pertinent to a determination of whether an "alter ego" relationship exists between an individual and a business entity include, among other things:

(a) Whether the individual is a majority shareholder, officer, director, trustee, managing partner, or otherwise in a position of authority over the affairs of the entity;

(b) Whether the individual controls and dominates the business entity's actions and affairs without consulting others;

(c) Whether the individual controls and sometimes withholds information from other investors;

(d) Whether the individual uses the business entity to shield himself from personal liability;

(e) Whether the individual uses the business entity for his own personal and financial gain;

(f) Whether the individual mingles his own and his family's affairs in the affairs of the business entity; and

(g) Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debt.

*See generally Drilcon, Inc. v. Roil Energy Corporation, Inc.,* 230 Mont. 166, 176–77, 749 P.2d 1058, 1063–64 (1988).

18. A corporation or business entity cannot be used to evade an individual's "public duty, such as the paying of taxes." *Wolfe v. United States,* 798 F.2d 1241, 1244 (9th Cir.1986), *amended on other grounds,* 806 F.2d 1410 (9th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987) (construing Montana law).

19. It is undisputed, and the Court so finds, that Edward Towe is the general manager of Grant Investments Fund and manages the fund in his "sole discretion," making all decisions with respect to Grant Investments Fund affairs on his own, and with only occasional consultation with others. Transcript, at 151, 198–199. The Court finds, based on the testimony presented, that Edward Towe exerts virtually complete control over every aspect of the affairs of Grant Investments Fund.

20. Although Edward Towe currently states that he has no personal assets in-

---

**1.** The Court notes that the case law generally concerns the propriety of piercing the *corporate* veil to obtain satisfaction of a tax debt owned by an individual who has used the corporate form in an attempt to avoid tax liability. This case, however, concerns Edward Towe's alleged use of an investment *partnership* to conceal his assets. In determining whether Edward Towe used Grant

Investments Fund as an "alter ego," the Court finds no reason why the analysis applicable to piercing the corporate veil should not apply to this action concerning piercing a partnership veil. A technical difference in the nature of the business entity does not preclude the government from asserting this defense to a wrongful levy action.

vested in Grant Investments Fund, he admits that he has personally invested in Grant Investment Funds in the past. Transcript, at 60, 76, 202–203.

21. The Court finds that the current major investors in Grant Investments Fund are either (a) direct descendants of Edward Towe; or (b) trusts established by Edward Towe and controlled by him as the managing trustee (e.g., the Heartland Trust, the S.O. Tow Trust, and the Lewis Rector Trust); or (c) foundations controlled by Towe as president and director (e.g., The Towe Antique Ford Foundation and the Towe Foundation). Transcript, at 99, 185, 212–13, 219–20, 227; Defendant's Exhibit AH.

22. As manager of Grant Investments Fund, Edward Towe has used the fund to discharge personal obligations, to shield himself from personal liabilities, and for personal gain. For example:

(a) In 1986, Edward Tow exchanged a secured note for $40,000.00 from James C. Stegmeier, payable to Grant Investments Fund, bearing an interest rate of 15% per annum, with his own unsecured promissory note to Grant Investments Fund in the amount of $42,267.29—the precise amount owed by Stegmeier to Grant Investments Fund at the time. See Plaintiff's Exhibit 11. Yet, Towe's promissory note to Grant Investments Fund bore interest at the rate of 10% per annum. Id. Furthermore, upon obtaining the Stegmeier note, Edward Towe assigned this note to the Montana Bank System to partially discharge Towe's own personal debt to the bank in the amount of approximately $180,-000.00. Edward Towe approved of this series of transactions in his capacity as general manager of Grant Investments Fund, despite the lower interest rate on his own unsecured promissory note and his knowledge that his own net worth at the time of the making of the note was approximately a negative $1,672,000.00. Moreover, Edward Towe has not made a single payment to Grant Investments Fund of either interest or principal on his note, and did not list this obligation to the Fund in his petition for bankrupt-

cy. Transcript, at 165–76. Even assuming the Stegmeier note was uncollectible, as Edward Towe contends, he still profited personally from his exchange of notes through partial discharge of his personal debt to the Montana Bank System.

(b) Edward Towe admits that he made loans to himself, and approved these loans as manager of Grant Investments Fund. Transcript, at 199, 295–96. These loans were not secured by assets of any kind, nor were they memorialized through execution of a promissory note by Edward Towe in favor of Grant Investments Fund. Transcript, at 207–08.

(c) Edward Towe readily admits that he regularly used his own funds and assets to pay Grant Investments Fund's debts. Transcript, 88–89.

(d) Edward Towe, acting as general manager of Grant Investments Fund, purchased from the Bank of Wibaux, Montana (where he served as an officer and director), a delinquent loan owed by Edward Towe personally, taking as security assets which Edward Towe now acknowledges were worth approximately $200,000.00 less than the delinquent loan amount. Thereafter, Edward Towe, again acting as general manager of Grant Investments Fund, accepted Edward Towe's personal interest in the S.O. Tow Trust, which was worth less than $100,000.00, in satisfaction of Towe's personal debt to Grant Investments Fund, which at the time exceeded $200,000.00. Transcript, at 252–56.

(e) Edward Towe, acting as general manager of Grant Investments Fund, loaned $20,000.00 to his son, Thomas E. Towe, for payment of an obligation jointly owed to the Montana Bank System by Edward and Thomas Towe. Payment of this obligation by Thomas Towe, with proceeds of the loan from Grant Investments Fund, discharged Edward Towe's personal liabilities to the Montana Bank System. Transcript, at 179–184.

23. Edward Towe maintains that he has a "moral obligation" to repay any personal

debts and amounts owed by him to Grant Investments Fund. Transcript, at 302. Yet, no evidence indicates that he is now able to pay such debts, or will be able to do so in the future. In fact, Edward Towe has filed a petition in bankruptcy indicating that he is insolvent.

24. Given Edward Towe's egregious and flagrant pattern of self-dealing, his co-mingling of his personal affairs with those of Grant Investments Fund, his use of Grant Investments Fund assets to discharge his own debts, his manipulation of Grant Investments Fund for his own personal gain, his complete dominance and control of Grant Investments Fund, and the prospect of no end to such abuse of his position as manager of Grant Investments Fund, this Court finds that Grant Investments Fund is the "alter ego" of Edward Towe. *Drilcon*, 230 Mont. at 176–77, 749 P.2d at 1063–64.

### CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this action pursuant to 26 U.S.C. § 7426 and 28 U.S.C. § 1340.

2. Grant Investments Fund is the "alter ego" of Edward Towe. "[T]he court may ignore the existence of the corporate form whenever an individual so dominates his organization as in reality to negate its separate personality." *Valley Finance*, 629 F.2d at 172; *see also Loving Saviour Church*, 728 F.2d 1085 (8th Cir.1984).

3. Furthermore, a taxpayer may not use a business entity, including a corporation or a partnership, to "evade a public duty, such as the paying of taxes." *Wolfe*, 798 F.2d at 1244.

4. In this case, Grant Investments Fund has no distinct and separate identity from Edward Towe, given his complete dominance and control over the affairs of Grant Investments Fund and his use of the partnership for his own personal ends. The government was therefore justified in seizing the 6,040 silver coins to satisfy Edward

Towe's and Florence Towe's personal income tax obligations.

5. Accordingly, the United States' levy on the 6,040 silver dollars at issue in this case was not wrongful, and the government is entitled to judgment in its favor.

The decision of the district court was affirmed on appeal by the Ninth Circuit Court of Appeals in *Grant Investments Fund v. I.R.S.*, 1 F.3d 1246 (9th Cir.1993) (decided without published opinion), and is thus final.

At trial, Grant introduced a number of exhibits and testimony from Edward Towe and other investors/partners showing the amount and date of each partner's investment in Grant. (Defendants' Exhibits 1523, 1524, 1525, 1526, 1527, 1528, 1529, 1530, 1531, 1532, 1533, 1534 and 1535). Defendants' Exhibit 134 is a compilation of Grant's investment accounts for 1956 to 1991, and the record shows Grant filed partnership tax returns, providing IRS Forms K–1 to each partner, for each year since its inception. One of the investors/partners of Grant is an entity described as The Heartland Trust. That alleged Trust is a party Defendant in an allied action by the Plaintiff, Trustee and Intervenors in Adversary Proceeding No. 92/00133. The validity of such Trust will be treated in a decision in that adversary proceeding filed contemporaneously with this order. Another investor is the Lewis Rector Trust. That investment interest is likewise treated in the decision in Adversary Proceeding No. 92/00133.

■ The doctrine of collateral estoppel based on a prior federal or state court judgment applies in a bankruptcy proceeding. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *In re Daley*, 776 F.2d 834, 838 (9th Cir.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The federal law of collateral estoppel is articulated in *In re Chapman*, 125 B.R. 284, 286 (Bankr.S.D.Cal.1991), cited approvingly in *Bugna v. McArthur*, (*In re Bugna*), 33 F.3d 1054, 1057 n. 1 (9th Cir.1994).[2] *Chapman* states:

---

**2.** *Bugna, supra,* states: "In determining the collateral estoppel of a state court judgment, federal courts must, as a matter of full faith and credit,

apply that state's law of collateral estoppel." 33 F.3d at 1057. If one were to apply Montana law on collateral estoppel, there would be no differ-

For collateral estoppel to apply, the conditions which must be met are as follows: (1) the party against whom estoppel is asserted must have been a party to the prior adjudication and actively participated in the litigation; (2) the issue that forms the basis for estoppel must have been actually litigated and determined on the merits; (3) the determination of the particular issue must have been necessary or essential to the court's judgment; and (4) the issue to be precluded is identical to the issue in the former action. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

*Chapman,* 125 B.R. at 286.

The issue of the alter ego status of Debtor Ed Towe and Grant was precisely and finally decided by the U.S. District Court. Even though certain intervenors/investors were not parties to that action, that does not destroy the application of the federal collateral estoppel doctrine. *See, Sampsell v. Imperial Paper Corp.,* 313 U.S. 215, 218–19, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941). Debtor Edward Towe and Grant were parties to the prior proceedings, the issue framed on the alter ego status of Towe vis-a-vis Grant was decided on the merits against Towe, who actively participated in the prior litigation, the alter ego issue was material to the former judgment, and the alter ego issue presented in the case *sub judice* is identical to that issue presented in the prior proceeding. Thus, the doctrine of collateral estoppel applies in the pending case. As a result, I conclude Defendant Grant is the alter ego of the Debtor Edward Towe.

## C. TRUSTEE'S REMEDY

■ Having concluded that collateral estoppel mandates shedding of the partnership entity, the resulting issue concerns what to do with the non-debtor investors' interests in Grant. The Plaintiffs argue that all of Grant's assets should be liquidated as estate property. The Defendants and Intervenors Gumpel, Brooks,[3] and Rector contend the assets traceable to each investor, apart from Towe, should be segregated from sale, or in the alternative each investor should be treated as a creditor with priority status ahead of the IRS and DOR.

■ This Court concludes that two alternative theories may prevail regarding the assets of Grant which are traced to non-debtor investors and did not originate from assets of the Debtor Edward Towe, or Debtor's alter ego corporations. Since piercing of the partnership assets to promote justice is an equitable remedy, the Court finds under the facts of this case that no evidence was submitted in the record by the Plaintiffs showing that action or activities of certain non-debtor investors aided or abetted Towe's personal use of Grant's assets to the detriment of creditor taxing authorities. Equity demands that the assets of such investors in Grant, excluding those of the Debtor and Debtor's alter egos, the Heartland Trust and Family Boarding School which Towe founded, should be excluded as assets of the estate upon liquidation of Grant's assets traceable to the Debtor. This record is barren of any credible evidence that the non-debtor investors, whose personal monies financed each investor's interest, were guilty of any attempt to thwart creditors' interests or evade taxes. Where equity acts to defeat injustice, it should also fashion a remedy to prevent injustice to innocent third parties. *See, In re Global Western Development Corp.,* 759 F.2d 724, 727 (9th Cir.1985) ("As courts of equity, bankruptcy courts will look through the form

ence in legal doctrine. *Berlin v. Boedecker,* — Mont. —, — – —, — P.2d —, — – —, 51 St.Rep. 569, 572–573, 1994 WL 319585, *5 (1994) states:

> Collateral Estoppel is in the nature of issue preclusion. Collateral estoppel may bar an action if: (1) the issue has been decided in a prior adjudication and is identical to the one presented; (2) a final judgment on the merits was issued; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.

*Anderson v. State,* (1991), 250 Mont. 18, 21, 817 P.2d 699, 701. We have said that of the criteria required to establish collateral estoppel, identity of issues is the most important and requires that the precise question has been ligated in the prior actions. *Stapleton v. First Sec. Bank,* (1983), 207 Mont. 248, 258, 675 P.2d 83, 89.

3. Defendant Brooks withdrew her investment of $21,115.14 in 1990 and thus has no account balance in Grant.

to the substance of any particular transactions and may contrive new remedies where those in law are inadequate.") (citations omitted.)

Accordingly, this Court will apply the rule announced in *Sampsell, supra,* 313 U.S. at 219, 61 S.Ct. at 907, which holds:

> All questions of fraudulent conveyance aside, creditors of the corporation [which is pierced] normally would be entitled to satisfy their claims out of corporate assets prior to any participation by the creditors of the stockholder [Towe]. *In re Smith,* 36 F.2d 697. Such priority, however, would be denied if the corporation's creditors were parties to a fraudulent transfer of the stock-holder's assets to the corporation. Furthermore, where the transfer was fraudulent or where the relationship between the stockholder and the corporation was such as to justify the use of summary proceedings to absorb the corporate assets into the bankruptcy estate of the stockholder [Towe], the corporation's unsecured creditors would have the burden of showing that their equity was paramount in order to obtain priority as respects the corporate assets. Cf. *New York Trust Co. v. Island Oil & Transport Corp.,* 56 F.2d 580.

This holding is consistent with the record in this case of no wrong doing by any of the non-debtor investors listed below. *Matter of S.I. Acquisition, Inc.,* 817 F.2d at 1152, addresses the above priority doctrine of *Sampsell* in this fashion:

> Based upon equitable concerns, an alter ego remedy applies when there is such an identity or unity between a corporation and an individual or another entity such that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust.

■ To the non-offending parties, who practiced no unequitable conduct, the neces-

sary corollary of *S.I. Acquisition* above-stated demands the separate investors' interests be separated from the Towe interests, and a priority creditor's status be granted each investor upon filing of a proof of claim in the estate.[4] In this context, I also find and conclude that reliance by the Debtor on the testimony of Jim Swain, CPA, and Defendant's Exhibits 116 and 134, which purport to show that the Debtor Towe has no assets in Grant, defies the alter ego finding in this case, and Adversary Proceeding No. 92/00133. I therefore refuse to accept the credibility of such evidence as it is contrary to the specific finding of alter ego status of Towe and Grant, a matter witness Swain never considered in rendering Swain's opinion.

■ The Defendants submitted into the record deposition testimony of some investors of Grant. None of this evidence was contradicted in any fashion by the Plaintiffs. Objections to deposition exhibits of Gumpel by the Plaintiff Trustee are overruled as each exhibit was properly identified and were business records of the deponent or Grant. I find from the deposition evidence that investors Norma Gumpel (Ex. 1523), Kristin Hartley (Ex. 1524), Ernest Hartley (Ex. 1525), Andrew Hartley (Ex. 1526), Sara Horsfall (Ex. 1527), Helen Hruska (Ex. 1528), Robert Jameyson (Ex. 1529), Anna Marie Frundle (Ex. 1530), Laetitia Yeandle (Ex. 1531), Stephen Yeandle (Ex. 1532), Nancy Brooks (Ex. 1533) and Ruth Jameyson (Ex. 1534) each invested their own funds in Grant and none of such funds were paid by the Debtors. I further find the investments of Lewis Rector and Lewis Rector Trust[5] are from funds belonging to said investors.

Exhibit 134 shows as of January 1, 1990, prior to the bankruptcy petition date, the purported balance of the amount of the above investors is recorded as follows:

---

4. While the Plaintiffs assert in their post-hearing brief that the issue of Grant's investors' priority is not before this Court, I find to the contrary since the *Sampsell* and *S.I. Acquisition* cases were specifically cited in the post-hearing memoranda of the Defendants and Plaintiffs, where the issue was specifically addressed, as well as being placed in issue in the Defendants'/Intervenors'

contentions in the Pre–Trial Order (Pre–Trial Order, p. 13).

5. The Court ruled at trial that the Lewis Rector Trust was a valid trust and excluded as property of the estate. A final order on that matter is entered in Adversary Proceeding No. 92/00133.

| | | |
|---|---|---|
| Norma Gumpel | $22,200 | |
| Kristin Hartley | 1,600 | |
| Ernest Hartley | 4,900 | (listed as Elmer Hartley) |
| Andrew Hartley | 5,100 | |
| Sara Horsfall | 500 | |
| Helen Hruska | 18,000 | |
| Robert Adrian Jameyson | 8,800 | |
| Anna Marie Frundle | 8,800 | |
| Laetitia Yeandle | 23,300 | |
| Stephen Yeandle | 16,300 | |
| Ruth Jameyson | 8,800 | |
| Lewis Rector | 46,000 | |
| Lewis Rector Trust | 75,000 | |

Certain withdrawals occurred post-petition, or may be subject to objection by the Trustee, and thus each of the above-named individuals will be granted a period of time to file a Proof of Claim to establish the exact amount of their investment.

As to all other funds in Grant, I find the funds in Grant were a direct source payment by Debtor Edward Towe or Debtor's alter egos, and thus all such funds are property of the bankruptcy estate. Adversary Proceeding No. 92/00133 covers Towe Farms, Inc., Towe Foundation, Heartland Trust and Towe Antique Ford Foundation. The funding of Family Boarding School account also came directly from Edward Towe. (Deposition Ex. 1535 of Morris Kirk.) Those funds are therefore property of the estate.

IT IS ORDERED Judgment shall be entered for the Plaintiff, Craig Martinson, Chapter 7 Trustee of the estate of William Edward Towe, a/k/a Edward Towe and against Defendants William Edward Towe and Grant Investments Fund, a partnership, directing the Defendants to turn over to the Plaintiff/Trustee all funds and assets of Grant Investments Fund held by the Debtor and/or all other partners or managers of Defendant Grant Investments Fund to allow the Plaintiff/Trustee to liquidate all assets now belonging to or hereinafter discovered in Defendant Grant Investments Fund.

IT IS FURTHER ORDERED the Defendants/Intervenors and partners/investors in Grant Investment Funds, i.e., Norma Gumpel, Kristin Hartley, Ernest Hartley, Andrew Hartley, Sara Horsfall, Helen Hruska, Robert Adrian Jameyson, Anna Marie Frundle, Laetitia Yenadle, Stephen Yeandle, Ruth Jameyson, Lewis Rector and Lewis Rector Trust are each granted until November 15, 1994, to file a priority Proof of Claim against the estate of William Edward Towe, a/k/a Edward Towe, Case No. 90–11685–7; and the Chapter 7 Trustee is granted 60 days thereafter in which to file any objections to said Proofs of Claim.

This Order constitutes the Findings of Fact and Conclusions of Law pursuant to F.R.B.P.Rule 7052.

The Clerk shall enter Judgment in accordance with this Order.