140 Nev., Advance Opinion 26

IN THE SUPREME COURT OF THE STATE OF NEVADA

OVIDIU ENE, INDIVIDUALLY; AND
INTERNATIONAL PROPERTY
HOLDINGS, LLC, A DOMESTIC
LIMITED LIABILITY COMPANY,
Appellants,
vs.
LAURA GRAHAM,
Respondent.

No. 84800

**FILED**

APR 18 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court judgment on a jury verdict in a personal injury action. Eighth Judicial District Court, Clark County; Linda Marie Bell, Judge.

*Reversed and remanded.*

Roger P. Croteau & Associates, Ltd., and Roger P. Croteau and Christopher L. Benner, Las Vegas,
for Appellants.

Moss Berg Injury Lawyers and John C. Funk and Marcus A. Berg, Las Vegas,
for Respondent.

_____

BEFORE THE SUPREME COURT, HERNDON, LEE, and PARRAGUIRRE, JJ.

24-13595

## OPINION

By the Court, LEE, J.:

Generally, a limited liability company's members and managers are not liable for the debts and liabilities of the company. Here, however, the district court found that a limited liability company's sole member and manager was the alter ego of the company and thus held him personally liable for injuries sustained on company property. We issue this opinion to clarify that the alter ego analysis for a limited liability company is the same as the analysis that is applied to determine whether an alter ego relationship exists with respect to a corporation. As with the alter ego analysis for a corporation, a district court must make specific findings as to influence over and governance of the company, the unity of interest and ownership between the alleged alter ego and the company, and whether adherence to the notion of separate entities would sanction fraud or promote injustice. Reviewing the district court's findings under this analysis, we conclude that substantial evidence does not support the district court's alter ego determination. Accordingly, we reverse the district court's judgment as to its alter ego determination and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Respondent Laura Graham sustained injuries when she tripped and fell over a sprinkler box on the property of appellant International Property Holdings, LLC (IPH). IPH was the sole owner of the property, and appellant Ovidiu Ene was the sole member of IPH. Graham filed a complaint against IPH and Ene, among others, alleging negligence. Graham did not assert alter ego theories of liability against Ene in her complaint or in any amended complaint.

 

During trial, Graham moved to amend her complaint to assert that Ene was the alter ego of IPH. Although Graham's motion was never resolved by the district court, the motion ultimately resulted in the initial inclusion, followed by the later exclusion, of jury instructions related to corporate protections and the alter ego theory of liability. Specifically, after Graham rested her case, the defense recalled Ene. Ene testified generally to his relationship with IPH and the property, ostensibly to establish facts to limit his liability as the owner and manager of IPH. After Ene's testimony, and over the objection of Ene and IPH, the district court added jury instructions on the protections of a limited liability company (LLC) and on the alter ego doctrine. Thereafter, Ene and IPH moved for a directed verdict, arguing that Ene was not individually liable and that the determination of alter ego liability was a legal issue for the court to decide. The district court denied the motion.

Ene and IPH then moved the district court to determine as a matter of law whether the evidence established Ene was the alter ego of IPH. The district court determined that Ene was the alter ego of IPH because he was the sole member of the LLC, there was a unity of interest and ownership, and adherence to the corporate fiction would promote an injustice. In making its decision, the district court relied on the following facts: (1) Ene had his own personal gate code to the property and had accessed the property on multiple occasions for personal use when it was not being rented, (2) Ene did not pay IPH or the property management company when he used the property for personal reasons, (3) Ene's father maintained a garden and a chicken coop on the property, (4) insurance for the property was in Ene's name, and (5) he remained the guarantor on the mortgage loan for the property.

(O) 1947A

The district court ultimately removed the jury instructions on the protections of an LLC and the alter ego theory based on its determination that Ene was the alter ego of IPH. The jury returned a verdict finding Ene and IPH partially liable. Ene and IPH appeal, challenging the district court's determination that Ene was the alter ego of IPH and the propriety of the alter ego theory being introduced by Graham mid-trial.

## DISCUSSION

*Introduction of the alter ego issue*

"When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. . . . [F]ailure to amend does not affect the result of the trial of that issue." NRCP 15(b)(2).[1] The district court's determination under NRCP 15(b) is reviewed for an abuse of discretion. *Yount v. Criswell Radovan, LLC*, 136 Nev. 409, 415, 469 P.3d 167, 172 (2020).

Our analysis here is stifled by the incomplete and disorganized record before us on appeal.[2] What does appear from the record, however, is

---

[1]The parties do not cogently argue this issue under NRCP 15(b)(2), nevertheless we conclude that NRCP 15(b)(2) provides the correct analysis.

[2]We note that the trial was rescheduled for an earlier date, that no motions in limine or other substantive pretrial motions are included in the record before us, and that the trial judge was replaced right before trial. There is some indication that Graham attempted to amend her complaint intra-trial; however, the district judge either deferred ruling on her motion or did not rule on it at all, perhaps because Ene's counsel was late on the morning of trial and thus was not present. Instead, the district judge appears to have included jury instructions on alter ego, which was incorrect because alter ego is a question of law. NRS 86.376. Ene's subsequent recall of himself as a witness and motion for a ruling on the alter ego issue as a matter of law appears to be in response to the improper jury instructions.

that the issue of alter ego was not impliedly tried by either party and should not have been entertained by the district court during trial. Regardless, even if Ene had consented to try the alter ego issue, substantial evidence does not support the district court's determination that Ene was the alter ego of IPH, as we discuss further below.

*Substantial evidence does not support the district court's determination that Ene was the alter ego of IPH*

Ene and IPH assert that the district court improperly applied the three-part analysis for determining alter ego of an LLC set forth in NRS 86.376. Graham asserts that the district court properly applied the analysis and that substantial evidence exists to support the decision. We recognize that the alter ego analysis for LLCs is the same as that for corporations and conclude that substantial evidence does not support the district court's determination that Ene was the alter ego of IPH.

*The alter ego analysis for LLCs under NRS 86.376 is the same as the analysis for corporations under NRS 78.747*

This court has yet to interpret NRS 86.376. Questions of law, including issues of statutory interpretation, are reviewed de novo. *State Indus. Ins. Sys. v. United Exposition Servs. Co.*, 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).

NRS 86.376, setting forth the corporate veil protections and alter ego exceptions as pertains to LLCs, was enacted by the Legislature in 2019. Prior to its enactment, this court relied on NRS 78.747, which sets forth the corporate veil protections and alter ego exceptions for *corporations*, when analyzing individual liability for managers or members of LLCs. *See, e.g., Gardner v. Eighth Jud. Dist. Ct.*, 133 Nev. 730, 736, 405 P.3d 651, 656 (2017).

NRS 86.376 states that the question of whether a person acts as the alter ego of an LLC is a matter of law and requires the court to make findings under the three following elements: whether (a) the LLC is influenced and governed by the person, (b) there is a unity of interest and ownership such that the person and LLC are inseparable, and (c) adherence to the notion of separate entities would sanction fraud or promote injustice. NRS 86.376 mirrors the language and elements of NRS 78.747, simply replacing the term "corporation" with "limited liability company."

Additionally, "LLCs provide the same sort of possibilities for abuse as corporations, and creditors of LLCs need the same ability to pierce the LLCs' veil when such abuse exists." *Gardner*, 133 Nev. at 736, 405 P.3d at 656. Based on the mirroring language of the statutes, the similar potentials for abuse, and the need for creditors to pierce the LLCs' veil to prevent abuse, it is clear the Legislature intended the analysis and application of the alter ego doctrine for LLCs to be the same as that of corporations. Therefore, our caselaw analyzing the alter ego doctrine for corporations remains instructive when reviewing a district court's application of the doctrine to an LLC.

*Substantial evidence does not support the district court's alter ego determination under NRS 86.376*

"[A]lthough corporations are generally to be treated as separate legal entities, the equitable remedy of piercing the corporate veil may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 902, 8 P.3d 841, 845 (2000) (internal quotations omitted). This court "will uphold a district court's determination with regard to the alter ego doctrine if substantial evidence exists to support the decision." *LFC Mktg. Grp., Inc.*, 116 Nev. at 904, 8 P.3d at 846.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

However, "[t]he corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.*, 85 Nev. 219, 220, 452 P.2d 916, 916 (1969).

"[T]he essence of the alter ego doctrine is to do justice whenever it appears that the protections provided by the corporate form are being abused." *LFC Mktg. Grp., Inc.*, 116 Nev. at 903, 8 P.3d at 845-46 (internal quotation marks omitted). "[T]he following factors, though not conclusive, may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Id.* at 904, 8 P.3d at 847. However, "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Id.* (quoting *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 602, 747 P.2d 884, 887 (1987)). Finally, the evidence supporting a finding of an alter ego "must also be the cause of [the] injury and must have sentenced a fraud or promoted an injustice before the corporate veil can be pierced." *Polaris*, 103 Nev. at 602, 747 P.2d at 887; *see also N. Arlington Med. Bldg., Inc. v. Sanchez Constr. Co.*, 86 Nev. 515, 522, 471 P.2d 240, 244 (1970) (concluding that the alter ego doctrine did not apply where the party seeking to pierce the corporate veil "failed to show any causal connection between the [corporation's alleged inadequate] financing and the inability to pay" a promissory note).

As noted, a person acts as the alter ego of an LLC only if (a) the LLC is influenced and governed by the person, (b) there is a unity of interest and ownership such that the person and LLC are inseparable, and (c) adherence to the notion of separate entities would sanction fraud or promote injustice. NRS 86.376(2). Here, the district court found that IPH

was a "one-person LLC," with Ene as the only member, and therefore, the first alter ego element—influence and government by the person—was satisfied. As to the second element—a unity of interest and ownership such that the person and LLC are inseparable—the district court noted that the mortgages on the property were held by Ene personally, that the property was insured by Ene personally, and that, even assuming all of the corporate formalities were observed, Ene would access the property for personal use at times without paying anything to the LLC. Thus, the district court found the second alter ego element was satisfied. As to the third element—fraud or injustice—the district court specifically found no fraud and instead summarily found that adherence to the idea that IPH was a separate entity from Ene would promote an injustice. We address each of the district court's findings below and conclude that substantial evidence does not support the district court's finding of alter ego.

> *Substantial evidence supports the district court's finding that IPH was influenced and governed by Ene*

We agree with the district court that single member LLCs structurally tend toward a finding that the LLC is "influenced and governed by the person." NRS 86.376(2)(a). We therefore hold that substantial evidence supports the district court's finding that the first element of alter ego analysis was satisfied. However, we emphasize that the mere fact that ownership and management of the LLC are accomplished by the supposed alter ego is insufficient by itself to support veil piercing without further findings. *See Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 377, 566 P.2d 819, 823 (1977) (holding that "the fact that [company 1] owned all shares of [company 2] and that the officers of [company 1 and company 2] were identical" was insufficient to satisfy the first two requirements of the alter ego doctrine); *see also Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 95 Nev. 463, 466,

596 P.2d 227, 229 (1979) ("Nor is mere mutuality of interest sufficient to make such a showing [of alter ego], without evidence of a commingling of funds or property interests, or of prejudice to creditors.").

*Substantial evidence does not support the district court's finding of a unity of interest and ownership*

We also agree with the district court that there is some evidence that Ene would occasionally use the subject property for his own personal enjoyment. This evidence alone, however, does not satisfy the unity of interest and ownership element without further findings as to a lack of observance of corporate formalities, maintenance of corporate records, comingling of funds, or prejudice to creditors. *LFC Mktg. Grp., Inc.*, 116 Nev. at 903, 8 P.3d at 845-46; *Bonanza Hotel Gift Shop, Inc.*, 95 Nev. at 466, 596 P.2d at 229-30. Most notably, there were no findings by the district court as to a causal connection between the occasional use of the property by Ene and the injury sustained by the plaintiff. Thus, we conclude that substantial evidence does not support the district court's conclusion under the second element of unity of interest and ownership that Ene is the alter ego of IPH.

*Substantial evidence does not support the district court's finding of manifest injustice*

Turning to the third element of the alter ego analysis, courts determine whether "[a]dherence to the notion of the limited-liability company being an entity separate from the person would sanction fraud or promote manifest injustice." NRS 86.376(2)(c) (emphasis added). The district court specifically considered and rejected fraud; therefore, we limit our review to whether substantial evidence supports a finding of injustice.

For the third element, "[i]t is enough if the recognition of the two entities as separate would result in an injustice." *Polaris*, 103 Nev. at

601, 747 P.2d at 886. An injustice may be found, for example, where the controlling officers misuse the corporate form to the detriment of their creditors. *See id.* at 602-03, 747 P.2d at 887-88 (determining veil piercing was appropriate where individual officers advanced withdrawals for personal use from corporate accounts after a complaint was filed, resulting in an undercapitalized corporation and an unpaid debt). An injustice may also be found where the owner makes "personal assurances to the creditor that [the owner] would be personally responsible for the debt." *Mosa v. Wilson-Bates Furniture Co.*, 94 Nev. 521, 524, 583 P.2d 453, 455 (1978). "Undercapitalization, where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied." *N. Arlington Med. Bldg., Inc.*, 86 Nev. at 522, 471 P.2d at 244. Absent fraud or injustice, however, "it is not an absolute ground for disregarding a corporate entity." *Id.*

The district court made the following statement as to the injustice inquiry:

> THE COURT: That adherence to the corporate—that because he has—the LLC is almost a fictitious entity, right? I mean, he has all of these things in his personal name. He's treating it— whenever it's not being rented, he's treating it as his personal property, that that would promote an injustice by adhering to the corporate fiction.

The district court made no findings as to the causal connection to the injury. Consequently, it is unclear how recognition of IPH as a separate entity would result in an injustice to Graham. Instead of making findings specific as to an injustice, the district court effectively collapsed its analysis of the first and second elements into its analysis of the third element. Because substantial evidence does not support the district court's

SUPREME COURT
OF
NEVADA

(O) 1947A

10

determination of alter ego, we reverse. *See LFC Mktg. Grp., Inc.*, 116 Nev. at 904, 8 P.3d at 846.

## CONCLUSION

We clarify that the alter ego analysis for LLCs under NRS 86.376 is the same analysis that applies to corporations under NRS 78.747. But as substantial evidence does not support the district court's determination that Ene was the alter ego of IPH, we reverse the district court's alter ego determination. As a result, we hold that Ene is not personally liable for the negligence of IPH and remand for further proceedings in accordance with this opinion.

_____, J.
Lee

We concur:

_____, J.
Herndon

_____ J.
Parraguirre